John T. GLYNN, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 92–1347.

United States Court of Veterans Appeals.

June 21, 1994.

Stephen A. Klein, Washington, DC, was on the brief, for appellant.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, Thomas A. McLaughlin, Deputy Asst. Gen. Counsel, and Richard Mayerick, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and IVERS, Judges.

FARLEY, Judge:

This is an appeal from a September 15, 1992, decision of the Board of Veterans' Appeals (BVA or Board) which found that appellant, John T. Glynn, had not submitted new and material evidence regarding his claim for service connection for a back condition, and thus refused to reopen this previously and finally denied claim. The Board also concluded that clear and unmistakable error had not been committed in an April 1946 rating decision and a September 1950 Board decision. A timely appeal to this Court followed. The Court will affirm the decision of the Board.

I. Factual and Procedural Background

Appellant served on active duty in the United States Army from July 16, 1942, until January 12, 1946. R. at 14. The report of his induction physical indicates that when he entered service, appellant reported having suffered a hernia in the past, and a "[s]acro-iliac back condition" and a "[s]acro-iliac

strain" in 1938; x-rays of the sacrum were negative. R. at 16–19. Prior to appellant's induction, Dr. Molony reported the August 19, 1941, results of x-rays taken of appellant stating, "Both sacroiliac joints appear essentially normal. No evidence of bone or joint disease is noted." R. at 15. Appellant's service medical records contain an entry dated March 9, 1944, reporting "[p]ast polio atrophy of muscles of right leg & calf—moderate drop foot." R. at 24, 25. On August 23, 1944, an x-ray of appellant's pelvic region revealed a "smooth contour of the head of the r[igh]t femur. No bony pathology is demonstrated. There is remarked deviation of the cocyx [sic] and sacrum to the left of the mid-line." R. at 31. Appellant was also seen on March 21, 1945, complaining of "[b]ackache—lumbar—chronic steady pain more acute past week." Id. The report of his physical at discharge dated January 1, 1946, notes that appellant gave a history of having strained his back two and one-half years prior and of being symptomatic; otherwise, the report notes no other defects or disease. R. at 51.

Appellant filed a VA application for pension or compensation in March 1946 claiming, "Strained back recieved [sic] Feb. or Mar. 1943 during infantry training. Has bothered during changes of weather and when overtired or during long periods of standing." R. at 52. An April 16, 1946, rating decision denied appellant's claim, noting his sacroiliac disability was not aggravated by service. R. at 54. In February 1950, appellant filed an application for hospital treatment for domiciliary care for back pain he claimed having suffered since 1941. R. at 55–56. The physical examination performed in conjunction with appellant's application noted a history of polio before service; the physician found muscle atrophy of the right lower extremity attributed to polio residuals, and rendered a diagnosis of lumbosacral strain. No limitation in movement of the back was found. Appellant's application was rejected. Id.

Dr. John Fletcher reported the results of a special orthopedic examination on March 14, 1950, during which appellant gave a history of a fall during service and subsequent treatment. R. at 63A. Dr. Fletcher's diagnosis

was "[r]esiduals anterior poliomyelitis involving right low back, right thigh, and right calf ... [s]train, recurrent, sacroiliac, right." *Id.* X-rays revealed "[n]o specific bony abnormalities. The lumbosacral and sacroiliac joints are within normal limits." R. at 63B. Another physical examination was performed in April 1950, the report of which indicates that appellant was complaining of low back pain, but relates only a diagnosis of hemorrhoids. R. at 66–72. Dr. Norman Johnson reported on April 11, 1950, that during a special neuropsychiatric examination, appellant related, "When I (appellant) went into the service they told me I had had infantile paralysis but no one ever told me so before...." R. at 72A–72B. A May 1950 VA regional office (RO) rating decision considered the evidence then of record and denied service connection since the "right sacro-iliac strain [was] all associated with pre-existing poliomyelitis and was not aggravated by service." R. at 73. The VA subsequently received the March 1950 notarized statements of Joseph R. Doti and William Alvin Wernet attesting that appellant visited the Prisoner of War Camp Station Hospital at Brady, Texas, for treatment of a back injury sustained from a fall off a train platform during service. R. at 64–65. Accompanying these affidavits was a letter from appellant stating that in 1944 he had fallen as described, and received x-rays and heat treatments. R. at 74.

On May 11, 1950, the RO continued the denial of appellant's claim. R. at 75. Thereafter, the Board denied service connection in a September 7, 1950, decision which mentioned the affidavits of Mr. Doti and Mr. Wernet, but concluded:

> It is established that when [appellant] was examined for service, it was recorded that he had had a sacroiliac back condition and a sacroiliac strain since 1938. It is not recorded that [appellant] received an injury to his back or incurred disease during service which aggravated the preexisting condition. The evidence does not justify a finding that [appellant's] back condition, which clearly and unmistakably existed

prior to service, increased in severity or was aggravated by military duty.

R. at 76–77.

Dr. Hellerman of the Rhode Island Hospital submitted a letter, dated December 19, 1950, which documents appellant's treatments during his infancy and adolescence from July 27, 1916, to August 26, 1929. R. at 78–79. This letter indicates, *inter alia,* that on August 1, 1922, appellant was seen for limping and pain in both calves and had complained for the four weeks prior of weakness and pain in the calves of both legs; new shoes provided no relief. The letter also relates that on October 24, 1922, appellant was seen with "slight toe-in and marked pronation of both feet, especially the right." R. at 79. However, no diagnosis was rendered.

Appellant was admitted to a VA hospital on February 20, 1951, complaining of low back pain. R. at 80. X-rays revealed "some sclerosing of the 5th lumbar facet, which is minimal." *Id.* Appellant underwent physical therapy and was given a Spencer belt; his condition improved. R. at 82. After a 25-day leave from the hospital, appellant was discharged on March 27, 1951, with a diagnosis from Dr. Samuel Spadea of minimal arthritis of the facet of the 5th lumbar vertebra, improved, and old poliomyelitis of the right leg "manifested by atrophy of the muscles of the [right] leg and Achilles reflex. Untreated, unchanged." *Id.* Dr. Spadea reevaluated appellant's condition on May 22, 1951, and stated:

> The poliomyelitis ... is an incidental finding during examination. It has nothing to do with the arthritis of the facets of the lumbar spine. The diseases are two distinct entities in themselves.

R. at 84. Also on May 22, 1951, however, Dr. Ross L. Wilson conducted a special orthopedic examination and rendered an opinion concerning appellant which specifically stated:

> *HISTORY:* ... It is quite obvious from examining [appellant's] past records, that he undoubtedly has had rather marked residuals of an old polio, with resultant weakness and atrophy of the muscles of his right lower back, right hip, right thigh, and right calf for many years. However, these physical findings were apparently com-

pletely missed by the medical examiner at the time of his induction into the service in 1942 and were not noticed until later when [appellant] was on active duty.... It is a well known fact that with the post-residuals of a poliomyelitis such as [appellant] has, chronic recurrent sacroiliac and low-back strain on the affected side is commonly encountered. If it could be definitely proved that [appellant] did sustain an injury to his back, in the service, it might possibly be postulated that he did receive some transient and temporary aggravation of his back condition resulting from the fall. However, in the judgment of this examiner, such aggravation could not be deemed to be permanent or long standing without further confirmatory x-ray evidence of underlying bony changes in his sacro-iliac joints and lumbar spine.... [The] opinion [of Dr. Horwitz, roentgenologist, is that] there is absolutely no evidence of any arthritis of the facets in the series of x-rays.... Dr. Comeau, [a] roentgenologist, stated that the lumbosacral spine was completely negative and special reference was made to the apophyseal joints which were ... within normal limits.... [T]he diagnosis of arthritis of the facets of the fifth lumbar vertebra was based on the x-ray interpretation by Dr. Spadea, the orthopedist, and not Dr. Comeau, the roentgenologist....

COMMENT: [Appellant] is suffering from residuals of an old anterior poliomyelitis, with resultant weakness and atrophy of the muscles of the right low-back region, right hip and thigh region, and the right calf. This condition has rendered [him] liable to recurrent, right, sacro-iliac strain and weakness with its resultant symptoms. Whether or not this sacro-iliac strain was aggravated by a fall which [appellant] claims occurred while he was in service in 1944, is not for this examiner to determine, inasmuch as there is no evidence of record presently contained in [appellant's] folder to substantiate his claim for a back injury with resultant aggravation of his back condition.

R. at 85–87. Thereafter, Dr. Wilson rendered a diagnosis that appellant then suffered from "residuals of old anterior poliomyelitis, with resultant weakness and atrophy of the muscles of the right low-back and lumbar region, right hip, right thigh region, and right calf," and "[c]hronic, recurrent, right sacro-iliac strain, secondary to" old poliomyelitis. R. at 87. Dr. Wilson specifically noted that arthritis of the facets of the lumbar spine was not found. Id. Appellant was readmitted as a "Non–Bed Occupant" to the same VA hospital on May 22, 1951, and was discharged on June 19, 1951, with a diagnosis of minimal arthritis of the fifth lumbar vertebra, treated and improved, and old poliomyelitis of the right leg, untreated and unchanged. R. at 89.

A March 28, 1951, letter from Dr. Michael A. Gaydosh relates his having treated appellant while stationed at the Prisoner of War Camp in Brady, Texas. R. at 83. Dr. Gaydosh stated that appellant had related a history of a fall from a train platform while moving prisoners of war from Oklahoma; that he had not attended appellant directly after the injury, but had assumed medical treatment after other medical personnel were transferred; that x-rays had been taken; and that appellant received twenty or twenty-five physio-therapy treatments. Id. An April 7, 1952, letter from Dr. Earnest Thompson recalled that he had.treated appellant prior to service in October 1939 for low back pain, and gave him a back brace which provided relief. "[Appellant] experienced gradual improvement in the back condition and was discharged from treatment on December 4, 1939." R. at 90. The VA also received the statement of Dr. Herman Gentile that he had treated appellant in April and May 1952 for low back pain and headaches. R. at 91. The RO in a confirmed rating continued the denial of appellant's claim on June 29, 1954, specifically finding no new and material evidence had been submitted. R. at 92.

In 1977, appellant expressed disagreement with the VA's disallowing his claim, but no further follow-up is contained in the record. R. at 95. In November 1990 appellant contacted the Disabled American Veterans (DAV) for assistance in pursuing his claim. R. at 106. In December 1990 the DAV submitted to the VA numerous medical reports

on appellant's behalf in an attempt to reopen his claim: a 1990 report from the Department of Diagnostic Imaging at the Rhode Island Hospital which relates findings consistent with central and lateral stenosis at L4–5, with other lumbar levels unremarkable, and no evidence of disc herniation; pathology laboratory test results; and an August 2, 1990, neurology report from Dr. Thomas Morgan which states,

> With this back pain [appellant] denies any true sciatic[a] but does state his back pain goes back to 1951 when he was diagnosed as having Facette arthritis, and he has had recurrent back pain ever since. Of interest in his past history is that he has always had somewhat of an atrophic right lower leg, which was originally felt to be polio, although this was never proven.

R. at 98–105. The RO in a January 25, 1991, rating decision found the evidence to be new, but not material to appellant's claim for sacroiliac strain. R. at 107–08. Appellant submitted a letter in April 1991 stating the names of the physicians who performed his induction physical, denying that he ever had polio, and reiterating that he fell during service and was treated. R. at 113. A deferred or confirmed rating decision by the RO continued the denial of the claim. R. at 114.

At an August 8, 1991, hearing before a VA hearing officer, appellant testified that he had injured his back prior to service, but after four to six weeks of treatment, he experienced no further back symptomatology until March 1944 when he fell while guarding prisoners of war. R. at 118–20. He further testified that at his separation from service his back was continuing to cause discomfort and pain. R. at 121. Also mentioned at the hearing was that he had been treated by Dr. Pizzarillo on June 7 for his lumbosacral spine and x-rays were taken, and that he was scheduled to see Dr. Pizzarillo again on August 16. R. at 123. Appellant related that Dr. Pizzarillo had told him he suffers arthritis of the facets. R. at 124. From the transcript of the dialogue at the hearing, it appears that the hearing officer was handed a statement from an attending physician in conjunction with the testimony regarding Dr. Pizzarillo, but no such document, nor the

records of Dr. Pizzarillo, is contained in the record. *See* R. at 123. At the hearing, appellant raised his claim that, pursuant to 38 C.F.R. § 3.105(a), there had been clear and unmistakable error (CUE) not only in the September 7, 1950, Board decision, but in all previous rating decisions, and specifically argued that CUE occurred because the VA failed to apply 38 C.F.R. § 3.303. R. at 124–25. On appeal, the Board apparently attempted to cover all bases in denying appellant's claims. The section headed "DECISION OF THE BOARD" recites that, after review and consideration of all evidence and material, "the preponderance of the evidence is against the claim of service connection for a back disability." *John T. Glynn,* BVA 92–22264, at 3 (Sep. 15, 1992). In the sections headed "FINDINGS OF FACT" and "CONCLUSION OF LAW," the Board found both that new and material evidence had not been submitted since the 1950 BVA decision, and that neither the 1946 RO decision nor the 1950 BVA decision was the product of CUE. *Id.* Before this Court, in addition to arguing that he is entitled to service connection, appellant alleges that the BVA erred in concluding that new and material evidence had not been submitted since the 1950 BVA decision, and erred in determining that that decision was not the product of CUE.

## II. New and Material Evidence

A final BVA decision "may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." 38 U.S.C. § 7104(b). The exception to this rule states that "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." 38 U.S.C. § 5108; *see also* 38 U.S.C. § 7104(b); *Spencer v. Brown,* 4 Vet. App. 283, 286–87 (1993); *Thompson v. Derwinski,* 1 Vet.App. 251, 253 (1991). Therefore, once a BVA decision becomes final under § 7104(b), absent new and material evidence presented or secured, the BVA cannot reopen or readjudicate the claim. 38 U.S.C. § 5108; *see also McGinnis v. Brown,* 4 Vet. App. 239, 244 (1993) (BVA reopening is "unlawful" and must be "set aside" when no new and material evidence has been submitted).

Evidence is new when not merely cumulative of other evidence on the record. Evidence is material when relative to and probative of the issue at hand, and of sufficient weight to present a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the disposition of the claim. *See Sklar v. Brown,* 5 Vet.App. 140, 145 (1993); *Cox v. Brown,* 5 Vet.App. 95, 98 (1993); *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991); *see also Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). Whether evidence is new and material is a question of law this Court reviews de novo. *See Spencer,* 4 Vet.App. at 287; *Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992); *see also* 38 U.S.C. § 7261(a)(1).

### A.

Appellant's claim was denied on the merits by the BVA in 1950; in 1954, the RO used a preprinted form to record a determination that new and material evidence had not been submitted since the previous decision and that "[s]uch decision is therefore CONFIRMED AND CONTINUED." R. at 92. Unlike the 1950 final BVA merits decision, the 1954 RO decision constituted a determination that there was no basis to reopen the previously finally denied claim. As the BVA indicated in its 1992 decision, "[t]he Board decision of September 1950 which denied service connection for a back disability is final with respect to the evidence then of record, and may not be reopened unless new and material evidence within the meaning of 38 U.S.C.A. § 5108 is received." *Glynn,* BVA 92–22264, at 4.

 The question arises whether, when determining if new and material evidence has been submitted to warrant reopening under 38 U.S.C. § 5108, consideration must be given to all of the evidence submitted since the last final denial on the merits or limited to the particular items of evidence received since the most recent denial of reopening. Framing this question another way, if evidence submitted in increments over time reaches a critical mass and becomes new and material, is a claimant to be denied reopening under § 5108 because the most recently submitted evidence, standing alone, does not constitute new and material evidence? The

pertinent provisions of 38 U.S.C. § 5108 state that "[i]f new and material evidence is presented or secured with respect to *a claim which has been disallowed,* the Secretary shall reopen the claim and review the former disposition of the claim." (Emphasis added). In *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993), we held that when a claim was not well grounded "there was no claim to adjudicate on the merits." Similarly in *McGinnis,* we held that when a previously and finally denied claim was reopened without the submission of new and material evidence, "in contemplation of law, . . . there was no claim to adjudicate on the merits or appeal to the BVA." *McGinnis,* 4 Vet.App. at 244. Therefore, a decision that a claim was not well grounded or that new and material evidence was not submitted is a denial that there *is* a claim; it is not a final denial or disallowance *of* a claim.

"Absent an absurd result, the plain meaning of the statute will be applied unless such an application is contrary to the apparent intention of Congress." *Gardner v. Derwinski,* 1 Vet.App. 584, 587 (1991) (citing *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)), *aff'd,* 5 F.3d 1456 (Fed.Cir.1993), *cert. granted,* —— U.S. ——, 114 S.Ct. 1396, 128 L.Ed.2d 69 (1994). In defining the starting point for the consideration of new and material evidence, the plain language of § 5108 speaks of a "claim which has been disallowed," not one which, "in contemplation of law" never existed. The statute requires the Secretary to reopen a claim if the claimant, at any time, submits new and material evidence; the statute does not limit the Secretary's review only to that evidence which has been received since the most recent determination that new and material evidence has not been submitted to reopen a claim. Nor does the statute limit a claimant in the number of attempts which he or she may make to reopen. Since the only criterion in § 5108 for reopening is that new and material evidence be submitted since the claim was denied on the merits, we conclude that the plain meaning of § 5108 can only be given its full force and effect if the Secretary—and this Court—are required to review all of the evidence submitted by a claimant since the last final denial of the

merits of a claim in order to determine whether a claim must be reopened and readjudicated on the merits. Such an interpretation of § 5108 produces neither an "absurd result" nor one "demonstrably at odds with the intention of its drafters." *Gardner,* 1 Vet.App. at 586–87. We hold, therefore, that the Board correctly based its § 5108 new and material evidence determination upon all of the evidence submitted since the 1950 final denial rather than only upon evidence received subsequent to the 1954 refusal by the RO to reopen the claim for lack of new and material evidence. *Cf. Person v. Brown,* 5 Vet.App. 449, 451 (1993) (new and material evidence review limited to "those items added to the record after the previous final disallowance of appellant's claim.")

### B.

▮ Evidence submitted since the 1950 final Board denial consists of (1) Dr. Hellerman's letter describing appellant's treatment between 1916 and 1929; (2) the 1951 x-rays and treatments from the VA hospital and the corresponding opinions of Drs. Spadea and Wilson; (3) a 1951 letter from Dr. Gaydosh attesting to treating appellant during service for a back injury resulting from a fall; (4) a 1952 letter from Dr. Thompson concerning appellant's treatment in 1939; (5) a statement from Dr. Gentile that he had treated appellant in 1952; (6) the 1990 reports from Rhode Island Hospital with the records of Dr. Morgan; (7) a 1991 letter from appellant attesting to never having had polio, of falling during service, and relating the names of his induction physicians; and (8) appellant's oral testimony before a VA hearing officer.

In denying appellant's claim in 1950, the Board stated, "It is not recorded that the veteran received an injury to his back or incurred disease during service which aggravated the preexisting condition. The evidence does not justify a finding that [appellant's] back condition, which clearly and unmistakably existed prior to service, increased in severity or was aggravated by military duty." R. at 77. Thus, in order for appellant to reopen his previously and finally denied claim for service connection, he must present evidence either material to the ab-

sence of a preexisting condition or to the occurrence of an in-service injury or disease "which aggravated the preexisting condition." *Id.*

In March 1951 Dr. Gaydosh submitted a notarized letter confirming that appellant had injured his back during service consistent with appellant's, Mr. Doti's, and Mr. Wernet's testimony. Dr. Gaydosh stated that when he was stationed at the Prisoner of War Camp, Brady, Texas, he treated appellant for his back injury with physical therapy, infra-red lamp treatments, massage, and exercises. R. at 83. In his letter, Dr. Gaydosh rendered a diagnosis that appellant had a "[b]ack injury, lumbar region (ill-defined because of lack of access to records) accidentally incurred by a fall while serving in the U.S. Army in Texas in 1944." *Id.* This evidence is relevant to whether appellant had incurred an injury during service, but is cumulative of evidence, which was before the Board in 1950, of appellant's having sustained an injury from a fall during service. Further, in light of the overwhelming medical evidence of record attributing appellant's chronic back strain to the residuals of polio, Dr. Gaydosh's letter offers evidence merely confirming that appellant sustained an injury during service, but offers nothing relevant to the issue of whether that in-service back injury aggravated appellant's preexisting condition, concerning which Dr. Wilson stated in his 1951 opinion that "such aggravation [during service] could not be deemed to be permanent or long standing without further confirmatory x-ray evidence of underlying bony changes in his sacro-iliac joints and lumbar spine." R. at 86. Dr. Wilson's opinion in conjunction with the x-rays taken of appellant's lumbosacral and sacroiliac joints in 1950 showing "[n]o specific bony abnormalities," R. at 63B, indicates that although appellant sustained an in-service injury to his back, such injury did not aggravate the preexisting condition. Although Dr. Gaydosh's letter is new within the meaning of 38 U.S.C. § 5108, there is no reasonable possibility that the letter, when viewed in conjunction with the evidence already of record, would change the disposition of appellant's claim; therefore, the letter cannot be characterized as new and material evidence for the

purpose of reopening. *See Colvin, supra; Sklar, supra; Cox, supra.*

None of the other evidence appellant submitted can be considered new and material. In fact, the majority of the evidence submitted since the 1950 Board decision actually supports a denial of service connection, particularly the 1951 opinion of Dr. Wilson. The 1952 letter from Dr. Thompson confirms that appellant had injured his back prior to service, thus supporting the finding that appellant's back condition preexisted service. The 1990 medical report from Dr. Morgan states, "Of interest in [appellant's] past history is that he has always had somewhat of an atrophic right lower leg, which was originally felt to be polio, although this was never proven." R. at 103. However, this is nothing more than a speculative statement that appellant's polio was never proven, rather than a definitive diagnosis that appellant never had polio. The overwhelming majority of doctors whose opinions and diagnoses are of record confirm not only that appellant had polio prior to service, but that his recurrent back strain was attributable to residuals of that polio.

Similarly, appellant's hearing testimony, Dr. Hellerman's letter, and Dr. Gentile's letter present no evidence concerning the issue of in-service aggravation or the issue of whether appellant's back condition preexisted service, and thus are not new and material for purposes of reopening. Finally, appellant's 1991 letter states, "I don't have polio. I understand that this is the basis for denial." R. at 113. This evidence is new because appellant had never previously stated he did not have polio, but cannot serve as the basis for new and material evidence within the meaning of § 5108 since appellant, as a lay witness, is not competent to render medical opinions. *See Moray v. Brown*, 5 Vet.App. 211, 214 (1993); *see also Espiritu v. Derwinski*, 2 Vet.App. 492, 495 (1992). Based on the foregoing reasons, the Court finds that appellant failed to submit new and material evidence since the previous final denial of his claim, and that the Board correctly refused to reopen it.

### III. Clear and Unmistakable Error

Pursuant to 38 C.F.R. § 3.105(a) (1993), the BVA is required to revise previous RO or BVA decisions which were the product of "clear and unmistakable error." *See Russell v. Principi*, 3 Vet.App. 310, 313–14 (1992) (en banc); *see also Chisem v. Brown*, 4 Vet.App. 169, 176 (1993). In *Russell*, this Court stated:

> In order for there to be a valid claim of "clear and unmistakable error," there must have been an error in the prior adjudication of the claim. Either the correct facts, as they were known at the time, were not before the adjudicator, or the statutory or regulatory provisions extant at the time were incorrectly applied. The claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated.

*Id.* at 313. Thus, the error must be "undebatable" and of the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made." *Id.* This Court is precluded from reviewing a claim of CUE in the first instance; instead, the necessary jurisdictional prerequisite for this Court to act is a BVA decision on the specific issue of CUE. *Id.* at 315; *see also Chisem*, 4 Vet.App. at 176. Our review is limited to determining whether the BVA's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See Russell*, 3 Vet.App. at 315 (citing 38 U.S.C.A. § 7261(a)(3)(A)); *see also Marlow v. Brown*, 5 Vet.App. 146, 151 (1993) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983) (discussing the narrow scope of the "arbitrary and capricious" standard)). Before this Court, appellant appeals only the Board's determination that CUE did not occur in the 1950 Board decision. *See* Appellant's Br. at 14; Appellant's Reply Br. at 2–3.

At appellant's hearing, the issue of CUE in the 1950 BVA decision was specifically raised. R. at 124. Appellant asserts that the Board in 1950 failed to consider a pertinent entry contained in the record of his discharge physical, i.e., that appellant had strained his back two and one-half years

prior to discharge and was still symptomatic at discharge. *See* R. at 51. Although it is true that the Board in 1950 did not specifically reference appellant's report on his discharge physical of a back strain which was "still symptomatic," R. at 51, neither did the Board make a specific finding that appellant never injured his back during service, an error which could possibly have formed the basis for a CUE reversal. *See Russell,* 3 Vet.App. at 319 (a Board factual finding denying the existence of evidence of record constitutes error). Rather, the Board in 1950 concluded that any injury appellant may have sustained during service did not aggravate his preexisting condition. In reviewing the evidence then of record, the Board in 1950 specifically stated, "When [appellant] was examined for discharge no musculoskeletal defects were noted." R. at 76. It is noted that appellant's representative mentioned a service medical report dated March 21, 1944, allegedly documenting appellant's in-service back injury (R. at 125) but no report fitting that description is contained in the record on appeal. Even if such a report of in-service injury existed, there is nothing to indicate that it would have any bearing upon the preexisting condition in light of the absence of musculoskeletal defects noted at discharge.

In finding that there was no CUE in the 1950 Board decision, the 1992 Board concluded that:

> While the VA examination approximately four years after service substantiated recurrent right sacroiliac strain, the clinical defects noted during the examination were attributed to the residuals of polio to the right lower back, right thigh and right calf. Essentially, there is no objective evidence substantiating a separate back injury during [appellant's] service or an increase in the underlying pathology of the back disability reported prior to service. [Appellant] has based his claim on an injury he says he sustained while getting off a train platform. As stated, this accident is not documented but that is not the crucial point. Assuming without conceding that he did hurt himself while stepping in a hole, the basis for the previous denials of service connection by VA is really that

residuals of this alleged incident were not demonstrated in service. There was perhaps acute low back strain in service but the various back problems diagnosed after service were attributed by medical personnel to a medical condition unrelated to service.... Therefore, in the absence of evidence of aggravation of the preexisting back disability during service or of a separate chronic back disability during service, the Board fails to find clear and unmistakable error in the ... September 1950 Board denial of service connection for a back disability.

*Glynn,* BVA 92–22264, at 5–6. As indicated in the discussion of new and material evidence, *supra,* the Board in 1950 did not deny the existence of an in-service injury to appellant's back, but rather concluded that any such injury did not aggravate his preexisting back condition. Based on the record before the 1950 Board, the reasons articulated by the Board at that time, and the reasons forwarded by the Board in 1992, the Court finds that the Board's 1992 decision finding that CUE did not occur in the 1950 Board decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A).

## IV. Conclusion

Upon consideration of the record and the parties' pleadings, the Court holds that appellant has not submitted new and material evidence since the 1950 Board denial of his claim. The Court further finds that the Board was not arbitrary and capricious in concluding that CUE did not occur in the 1950 Board decision. Therefore, the September 15, 1992, decision of the Board of Veterans' Appeals is AFFIRMED.