**Ponciano E. SARMIENTO, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 93–1013.

United States Court of Veterans Appeals.

Aug. 10, 1994.

As Amended Aug. 30, 1994.

Before KRAMER, FARLEY, and IVERS, Judges. FARLEY, Judge, filed the opinion of the Court. KRAMER, Judge, filed a separate concurring opinion.

FARLEY, Judge:

Appellant, Ponciano E. Sarmiento, appeals a September 1, 1993, decision of the Board of Veterans' Appeals (BVA or Board) which refused to reopen his "claim for basic eligibility for VA benefits...." R. at 6. The Board held that appellant had not submitted new and material evidence since a May 4, 1990, VA letter informing him that he was ineligible for VA benefits because the Department of the Army could not verify his service with the Philippine Commonwealth Army, the United States Armed Forces in the Far East, or recognized guerrilla forces. A timely appeal to this Court followed. On consideration of the parties' briefs and record on appeal, the Court will vacate the decision of the Board and remand the matter for further proceedings consistent with this opinion.

## I.

In August 1989 appellant filed with the VA an application for compensation and pension requesting service connection for dysentery, beriberi, and a heart condition. R. at 16–19. The VA forwarded a VA Form 70–3101, Request for Information, to the Department of the Army in an attempt to verify that appellant's claimed service in the Philippines from December 15, 1941, to November 25, 1947, qualified him for eligibility to VA benefits. *See* R. at 21. By letter dated May 4, 1990, VA informed appellant that the Department of the Army had been unable to verify that he had qualifying service. R. at 34. The letter stated, "Since the records do not reveal recognized military service with the Armed Forces of the United States, it is necessary to disallow your claim for disability benefits." *Id.*

In January 1992 appellant submitted a letter to the VA in which he referred to the May 4, 1990, VA letter and stated: "Please be informed that my name used in service was Paciano E. Sarmiento although my real name is Ponciano E. Sarmiento." R. at 36.

Ponciano E. Sarmiento, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, David W. Engel, Deputy Asst. Gen. Counsel, and Susan A. Wuchinich, Washington, DC, were on the brief for appellee.

With this letter appellant submitted copies of documents, virtually illegible in the record on appeal, appearing to be a Republic of the Philippines, Department of Finance, certificate and a Philippine Army discharge certificate. R. at 38–40. By letter dated February 4, 1992, the VA regional office (RO) informed appellant that there was no basis for reopening his claim because he had not submitted new and material evidence. R. at 42. In April 1992, appellant filed a letter expressing disagreement, in which he stated:

I feel that the documents I have forwarded to your office, as well as the correction on my name, may be enough basis so that further verification of my service may be considered by the U.S. Department of the Army. I was hoping that may you [sic] RECONTACT the said department under 38 U.S.C. 3007 [currently 38 U.S.C. § 5107], as the latter prefers only request[s] from authorized agencies such as your office.

R. at 44. After receiving another letter from the VA stating his claim had been disallowed, R. at 46, appellant wrote in June 1992, "I respectfully disagree with your decision.... Under 38 U.S.Code 3007, please request from the U.S. Department of the Army a recertification of my World War II Military Service with POW status." R. at 48. After a Statement of the Case was issued in July 1992 (R. at 52–55), appellant submitted more Philippine documents including, *inter alia*, a copy of a Prisoner's Identification Card from the concentration camp at O'Donnel, and a more legible copy of a Philippine Army discharge certificate indicating that Paciano E. Sarmiento was honorably discharged after having served from December 15, 1941, to November 25, 1947. R. at 57–66. A Supplemental Statement of the Case was issued, R. at 69–71, and appellant filed a VA Form 1–9, again requesting that verification of service be sought by the VA. R. at 75.

The Board issued a decision on March 31, 1993, which remanded the matter to the RO to determine whether appellant had submitted new and material evidence sufficient to reopen his claim. *See* R. at 78–82. The RO determined that new and material evidence had not been presented or secured. R. at 84.

Similarly, the Board determined that appellant had submitted new but not material evidence, and thus denied reopening of appellant's claim pursuant to 38 U.S.C. § 5108. R. at 7–8.

## II.

In *Aguilar v. Derwinski,* 2 Vet.App. 21, 23 (1991), this Court held:

Before applying for benefits, a veteran must submit evidence of service and the character of the veteran's discharge. If the veteran does not submit evidence, VA will request verification of service from the service department. 38 C.F.R. § 3.203(c) (1991).... A veteran ... who fails to submit appropriate evidence never attains the status of claimant.

Consequently, the Secretary is not obliged to determine whether the claim is well-grounded, nor is he obliged to assist such a person in developing the facts pertinent to the claim. 38 U.S.C. § 5107. *See Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990) (quoting *Gilbert v. Derwinski,* 1 Vet. App. 49, 55 (1990)). Although VA has an obligation to assist a *claimant* in developing the facts pertinent to a well-grounded claim, to give a *claimant* the benefit of the doubt, and to render a decision which grants every benefit which can be supported in law while protecting the interests of the government, 38 C.F.R. § 3.103(a) (1991), this is not true for those who are not entitled to be called "claimants."

*Aguilar,* 2 Vet.App. at 23; *see also* 38 U.S.C. §§ 101(2), 1110; 38 C.F.R. §§ 3.203, 3.205 (1993).

In the case of an individual seeking status as a "claimant" by virtue of his or her status as a "veteran," that person must have had service "in the active military, naval, or air service, and [have been] discharged or released therefrom under conditions other than dishonorable." 38 U.S.C. § 101(2). Certain service in the organized forces of the Government of the Commonwealth of the Philippines or in the Philippine Scouts is deemed by operation of law *not* to be qualifying active service. *See* 38 U.S.C. § 107; *Dela Pena v. Derwinski,* 2 Vet.App. 80 (1992). Pursuant to 38 U.S.C. § 501(a)(1), the Secre-

tary has established by regulation requirements for verifying recognized service in the United States Armed Forces for purposes of eligibility to VA benefits. *See* 38 C.F.R. § 3.203 (1993).

■ Section 3.203 provides in part that when evidence is presented:

[f]or the purpose of establishing entitlement to pension, compensation, dependency and indemnity compensation or burial benefits the [VA] may accept evidence of service submitted by a claimant . . . without verification from the appropriate service department if the evidence meets the following conditions:

(1) The evidence is a document issued by the service department . . .; and

(2) The document contains needed information as to length, time and character of service; and

(3) In the opinion of the [VA] the document is genuine and the information . . . is accurate.

.        .        .        .        .

(c) *Verification from the service department.* When the claimant does not submit evidence of service or the evidence of service does not meet the requirements of paragraph (a) of this section . . . the [VA] *shall* request verification of service from the service department.

38 C.F.R. § 3.203 (emphasis added). Findings by the service department verifying a person's service "are binding on the VA for purposes of establishing service in the U.S. Armed Forces." *Duro v. Derwinski,* 2 Vet. App. 530, 532 (1992); *see also Dacoron v. Brown,* 4 Vet.App. 115, 120 (1993).

### III.

#### A.

In his brief in this Court and his correspondence with the VA, appellant argues for a reversal on the ground that the Secretary breached his duty to assist under 38 U.S.C. § 5107(a) by failing to seek verification of his service a second time from the Department of the Army, this time under a different name. The Secretary, in turn, urges this Court to affirm the Board's decision that

appellant did not submit new and material evidence to warrant reopening of his claim under 38 U.S.C. § 5108. Appellant's § 5107(a) argument and the Secretary's § 5108 argument must be rejected for the same reason.

■ Appellant's previous attempt to establish status as a "veteran" under 38 U.S.C. § 101(2) was unsuccessful because the Department of the Army was unable to verify service which would make him eligible for VA benefits as a veteran. Thus, he "never attain[ed] the status of claimant." *See Aguilar, supra.* With respect to appellant's § 5107(a) duty-to-assist argument, the submission of a well-grounded claim is "a prerequisite to the triggering of the duty-to-assist obligation under section 5107(a)." *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991); *see also Suttmann v. Brown,* 5 Vet. App. 127, 137 (1993) ("Once a claimant submits a well-grounded claim for VA benefits, the Secretary is required to assist . . ."). Thus, under § 5107(a), the Secretary only has a duty to assist "such a claimant," i.e., one who has met the burden of submitting a well-grounded claim; the Secretary is not under a statutory obligation to assist one who has not submitted a well-grounded claim. Since appellant never attained the status of claimant, he never submitted a claim, well grounded or otherwise, and the Secretary was neither obligated to determine whether appellant's claim was well grounded nor under a statutory duty to assist him in the development of evidence.

■ The Secretary's § 5108 argument suffers from the same false premise as appellant's "duty to assist" contention. Section § 5108 by its terms deals with the reopening of claims which have been the subject of previous final denials. Such a final denial is a prerequisite to the applicability of 38 U.S.C. § 5108 which requires that new and material evidence be presented or secured before a previously and finally denied claim can be reopened. *See* 38 U.S.C. § 5108, 7104(b), 7105(c); *see also Suttmann,* 5 Vet. App. at 135–36; *Thompson v. Derwinski,* 1 Vet.App. 251, 253 (1991). Because appellant "never attain[ed] the status of claimant," he did not submit any claim, well grounded or

otherwise, and therefore there was no finally denied claim which could have been reopened under 38 U.S.C. § 5108. The VA May 1990 letter cannot be construed as a final denial of the merits of a claim because, appellant not having achieved the legal status as a claimant, there was no claim which could have been denied. *Cf. Glynn v. Brown,* 6 Vet. App. 523, 528 (1994) ("a decision that ... new and material evidence *was not submitted* is a denial that there *is* a claim; it is not a final denial or disallowance *of* a claim"); *McGinnis v. Brown,* 4 Vet.App. 239, 244 (1993) (a claim reopened absent new and material evidence never existed "in contemplation of law"). The Board's refusal to reopen for lack of new and material evidence cannot be affirmed because there simply was no finally denied claim which could be reopened under 38 U.S.C. § 5108.

### B.

Our analysis is in keeping with a now relatively long line of decisions in which the Court has interpreted the statutes which govern the adjudication of claims by veterans. Almost four years ago in *Gilbert,* this line began with the holding that subsections (a) and (b) of 38 U.S.C. § 5107 "establish and allocate chronological obligations" such that *if* a claimant shoulders the initial burden of submitting a well-grounded claim, *then* the Secretary is obligated by § 5107(a) to assist the claimant in developing the facts pertinent to the claim and by § 5107(b) to give the claimant the benefit of the doubt. *Gilbert v. Derwinski,* 1 Vet.App. 49, 55 (1990); *see also Murphy v. Derwinski,* 1 Vet.App. 78, 81–82 (1990). In subsequent decisions, the Court has held that *if* an individual claiming entitlement to veterans benefits fails to establish eligibility as a claimant, *then* the Secretary has no statutory duty to assist under 38 U.S.C. § 5107(a). *See Aguilar,* 2 Vet.App. at 23. Similarly, *if* a claimant does not submit a well-grounded claim under § 5107(a), *then* the Secretary has no statutory duty under § 5107(a) to assist. *See Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993). Under 38 U.S.C. § 5108, *if* new and material evidence is submitted, *then* the Secretary must reopen and readjudicate a finally denied claim. *See Suttmann,* 5 Vet.App. at 135–36; *Thompson,*

1 Vet.App. at 253. *If* a denied claimant seeks to reopen, *then* 38 U.S.C. § 5108 requires that the Secretary consider all evidence submitted since the claim was last denied on the merits. *See Glynn,* 6 Vet.App. at 528–29. *If* the Court determines upon review that the BVA purported to decide the merits of an original claim which was not well grounded under 38 U.S.C. § 5107(a) or a reopened claim where there was *no* new and material evidence under 38 U.S.C. § 5108, *then* the BVA's decision must be vacated due to lack of jurisdiction because, in contemplation of law, "there was no claim to adjudicate." *McGinnis,* 4 Vet.App. at 244.

As this line of precedential decisions makes clear, the Court has held that Congress established and allocated "chronological obligations" to be fulfilled in the process of adjudicating claims for benefits by veterans. In addition, we have held that the statutes require the Secretary to make discrete consequential decisions at certain stages in the adjudication process and to support those decisions by a statement of reasons or bases. Such statutorily required decisions include: Did the individual establish his or her eligibility as a proper claimant? Was a well-grounded claim submitted? Was new and material evidence submitted since the last final denial of the claim? The answers to these questions will determine the nature and extent of any further statutory "chronological obligations." For example, if the Secretary determines that an individual has not established status as an eligible claimant, no further development is required. If the Secretary determines that a claim is not well grounded, again, no further development is required and there is no duty to assist visited upon the Secretary. *See Grivois v. Brown,* 6 Vet.App. 136 (1994). If the Secretary determines that a claim is well grounded or that new and material evidence has been submitted, then the duty to assist attaches and the claimant is entitled to a decision on the merits. Of course, all of the Secretary's decisions in this regard are subject to judicial review by this Court on appeal.

The net result of our jurisprudence to date is a claims adjudication process in which the

statutory obligations of the veteran and the Secretary are defined and in which the adjudicatory determinations by the Secretary must be clear and precise, comprehensible to the veteran, and reviewable by this Court. That, after all, was an express goal of the drafters of the Veterans' Judicial Review Act of 1988. *See Gilbert*, 1 Vet.App. at 56 (quoting from S.Rep. No. 418, 100th Cong., 2d Sess. 38 (1988)).

Judge Kramer interprets the various statutes and the related decisions of the Court in a different light. In his whimsical concurring opinion, which evokes images ranging from the philosophical to the Dickensian, our colleague renews his continuing assault upon a number of his Court's precedential decisions in a campaign which began in *Aguilar* (*see* 2 Vet.App. at 23 (Kramer, J., concurring)) or, perhaps, in *Gilbert* (*see* 1 Vet.App. at 59 (Kramer, J., concurring)). From his proffered analysis, it appears that Judge Kramer reads 38 U.S.C. §§ 5107 and 5108 as placing minimal, if any, burdens upon every prospective claimant and as assigning all-encompassing, everlasting duties upon the Secretary to assist every potential claimant and to decide on the merits every possible claim; he apparently rejects the notion that Congress established and assigned chronological obligations in the adjudication process. However, as noted above, the words of the statutes and our decisions will not permit such an interpretation. *See also Counts v. Brown*, 6 Vet.App. 473, 480 (1994) (Farley, J., concurring). The concurring opinion demonstrates only that, as Justice Souter recently said of Justice Scalia, our colleague is indeed a noble "gladiator, but he thrusts at lions of his own imagining." *Board of Education v. Grumet*, ––– U.S. –––, –––, 114 S.Ct. 2481, 2493, 129 L.Ed.2d 546 (1994).

## IV.

■ The Secretary's statutory duties to assist under § 5107(a) and to reopen under § 5108 were never triggered because appellant did not achieve the status of claimant. However, in regulations under the heading of EVIDENCE REQUIREMENTS, the Secretary has taken upon himself an affirmative non-statutory duty to "request verification of service from the service department" when one claiming eligibility for benefits fails to submit evidence of service or submits insufficient evidence. *See* 38 C.F.R. § 3.203(c) ("When a claimant does not submit evidence of service ... the [VA] *shall* request verification of service from the service department." (Emphasis added.)). The voluntarily-assumed regulatory duty to seek evidentiary verification is couched in mandatory, not discretionary terms and, unlike 38 U.S.C. § 5107(a) which only obligates the Secretary to assist "*such* a claimant" (emphasis added), the regulation does not make the Secretary's evidentiary duty contingent upon the submission of a well-grounded claim. Moreover, there is no stated limit on the number of times that the Secretary "shall" request service department verification when one claiming entitlement fails to submit qualifying evidence of service.

In the typical case, the Secretary would have fulfilled his regulatory duty to verify under § 3.203(c) by making a single request for verification of service from the service department. An unsuccessful applicant who believed there was reason to dispute the report of the service department or the contents of military records could pursue such disagreement with the service department. This, however, is not a typical case. Although the Secretary did initially request verification of the Department of the Army in 1990, appellant belatedly informed the VA in 1992 that his service records were kept under the name Paciano Sarmiento rather than under his current name, Ponciano Sarmiento, which was the name used for the initial verification request. The net effect of the Board's misguided "new and material evidence" analysis and its consequent refusal to "reopen" was to deprive appellant of the benefit of 38 C.F.R. § 3.203(c) in his attempt to establish entitlement under a different name. The Court holds that the VA erred in not complying with 38 C.F.R. § 3.203(c) by requesting verification of appellant's service under the name Paciano Sarmiento. A remand will provide the VA with an opportunity to fulfill its regulatory obligation by requesting verification of appellant's service under the name of Paciano Sarmiento from

the service department pursuant to 38 C.F.R. § 3.203(c).

■ Seizing on the word "claimant" in the regulation, our concurring colleague argues that the Secretary has a statutory duty under 38 U.S.C. § 5107(a) to assist this "claimant." For the reasons noted in Part III, *supra*, we do not share this view. Moreover, we believe it clear that the use of the word "claimant" in the regulation at issue, 38 C.F.R. § 3.203, can and must be distinguished from the same term as it appears in 38 U.S.C. § 5107(a) which imposes upon the Secretary a duty to assist "such a claimant." The regulation, which falls under the heading of EVIDENTIARY REQUIREMENTS, uses the term "claimant" in the context of the evidence necessary to establish the initial condition precedent to any claim for veterans benefits, qualifying military service; thus, the "claimant" referred to in the regulation is one claiming eligibility. The "claimant" referenced in the statute is one whose eligibility has been established and who has submitted a well-grounded claim. *See Murphy*, 1 Vet. App. at 81–82. For these reasons, we are unable to agree with Judge Kramer that the Secretary's use of the word "claimant" in an evidentiary regulation on the subject of evidence of qualifying service somehow incorporates the statutory duty to assist under 38 U.S.C. § 5107(a).

### V.

For the foregoing reasons, the September 1, 1993, decision of the Board of Veterans' Appeals is VACATED and the matter is REMANDED for proceedings consistent with this opinion.

KRAMER, Judge, concurring in the result:

I concur only in the result and write separately to address that part of the majority's analysis with which I disagree.

### I.

Pursuant to 38 U.S.C. § 5108, "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." As discussed in Part II, *infra*, nothing in the statutory scheme provides that a claim can *only* be "disallowed" or have a "former disposition," where there has been a disposition *on the merits*. The VA, in its May 1990 letter, disposed of appellant's claim not on the merits, but by disallowance for lack of status. As appellant did not file a Notice of Disagreement (NOD) as to this disallowance pursuant to 38 U.S.C. § 7105(b)(1) (NOD shall be filed within one year from the date of mailing of notice of the result of initial review or determination), contrary to the majority's conclusion, the letter was a final action or determination and the disallowance was reopenable under section 5108 only with "new and material evidence." *See* 38 U.S.C. § 7105(c), discussed in Part II, *infra*.

"New" evidence is that which is not merely cumulative of other evidence of record. *Cox v. Brown*, 5 Vet.App. 95, 98 (1993). "Material" evidence is that which is relevant to and probative of the issue at hand, and which "must be of sufficient weight or significance (assuming its credibility) that there is a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome" of the case. *Id.* Appellant's statement indicating, in essence, that his military service records would be found under a slightly different given name than his real name was new, relevant to and probative of his status as a veteran, and must be considered to have created a reasonable possibility that the outcome with respect to that status would be different. *See Justus v. Principi*, 3 Vet.App. 510, 512–13 (1992) (evidence is presumed to be credible for the purpose of determining whether there is new and material evidence to reopen a claim). Because appellant has met the test of new and material evidence, the duty to assist was clearly triggered. *Cf. Ivey v. Derwinski*, 2 Vet.App. 320 (1992); *White v. Derwinski*, 1 Vet.App. 519 (1991) (even where an appellant has not submitted new and material evidence in an attempt to reopen his claim, the duty to assist is triggered where the VA is on notice of the existence of evidence that might rea-

sonably lead to the development of new and material evidence).

In addition, without reference to whether a well-grounded claim has been filed, 38 C.F.R. § 3.203(c) (1993) specifically provides as follows when status is at issue: "When the *claimant* does not submit evidence of service ..., the [VA] shall request verification of service from the service department." (Emphasis added.) Because new and material evidence has been submitted in this case, the Board of Veterans' Appeals (BVA) decision should be reversed and the matter remanded for compliance with the duty to assist and 38 C.F.R. § 3.203(c), followed by readjudication under *Cox, supra.*

Contrary to this approach, the majority first concludes that under *Aguilar v. Derwinski,* 2 Vet.App. 21, 23 (1991), appellant "never attained the status of claimant," *ante* at 83 (a concept later extended by *McGinnis v. Brown,* 4 Vet.App. 239, 244 (1993), and *Glynn v. Brown,* 6 Vet.App. 523, 528 (1994), *see* Part II, *infra*), and then magically declares, amalgamating the best that ontology and alchemy have to offer, that appellant "did not [even] submit *any* claim, well grounded or otherwise." *Id.* As a consequence, the majority states that the statutory duty to assist was never triggered. Despite the fact that the majority purports to deal with a nonclaimant who has filed a nonclaim, it then, nevertheless, holds that appellant is entitled to a remand pursuant to 38 C.F.R. § 3.203(c). The obligation imposed on the VA, pursuant to this regulation, however, is extended only to a "claimant." Astoundingly, the majority again waves its wand and surrealistically intones that while appellant is not a genuine claimant under 38 U.S.C. § 5107 (which contrary to the majority's imagination, confers claimant status on any "person who submits a claim for benefits") he is some kind of a lesser claimant pursuant to 38 C.F.R. § 3.203(c).

## II.

In *Aguilar,* the Court stated that "[a] veteran or spouse who fails to submit appropriate evidence [of status] never attains the status of a claimant." 2 Vet.App. at 23. Even without divining the absurd extent to

which *Aguilar* would later be carried, *infra,* I believed at the time *Aguilar* was issued that status was merely one element of a claim to be established in the same way as any other element involved in a claim, such as service connection or degree of disability. *See Aguilar,* 2 Vet.App. at 23–24 (Kramer, J., concurring). While insufficient evidence of status might mean, in an appropriate case, that a claim was not well grounded, it simply did not follow that there was no claimant.

In *McGinnis,* the Court correctly stated that because appellant had not submitted new and material evidence to reopen the previously disallowed claim, "there was no claim to adjudicate *on the merits.*" 4 Vet.App. at 244 (emphasis added). But in *Glynn,* the *McGinnis* "on the merits" language and identical "on the merits" language in *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993) (when a claim was not well grounded, "there was no claim to adjudicate *on the merits*" (emphasis added)) was conveniently conjured away, and, presto, we are left with the incredible result that whenever a claim is not well grounded or new and material evidence has not been submitted, there "is a denial that there *is* a claim," *Glynn,* 6 Vet.App. at 528, i.e., the claim "'in contemplation of law' never existed." *Id.* (quoting *McGinnis,* 4 Vet. App. at 244).

*Glynn's* incredible transformation of *McGinnis,* however, should not suggest that *McGinnis* itself should be exempt from further scrutiny. While correct in its conclusion that a merits adjudication was premature, it did not stop there. Rather, it declared that when the BVA prematurely adjudicates a nonclaim (as transformed into such by *Glynn*), the BVA's decision must be vacated due to lack of jurisdiction. *McGinnis,* 4 Vet.App. at 244. As the question of the viability of such a result is presently before the en banc Court, *Edenfield v. Brown,* 6 Vet.App. 432 (1994) (en banc order consolidating with *Smith v. Brown,* No. 92–1369), and has already been discussed in previous issuances, I will not address it here, other than to ponder whether a new and onerous burden is being imposed by the Court on an already overloaded, backlogged VA adjudication system which has seemingly been re-

quired by *McGinnis* to readjudicate decisions vacated by the court which are, in essence, nothing more than affirmances on grounds other than those stated in the BVA decisions being vacated. *See Green v. Brown*, 5 Vet.App. 83, 84–87 (1993) (Kramer and Steinberg, JJ., dissenting); *Green v. Brown*, 4 Vet.App. 382, 384 (1993) (Steinberg, J., dissenting); *McGinnis*, 4 Vet.App. at 244–46 (Steinberg, J., concurring in part and dissenting in part). *See also Layno v. Brown*, 6 Vet.App. 465, 472 (1994) (Steinberg, J., concurring in part and dissenting in part).

The majority opinion here, considering its view of *Aguilar, McGinnis*, and *Glynn*, stands for the bottom-line proposition that claimants aren't really claimants and don't really have claims if their claims were properly denied, or should have been denied, by the BVA on any basis other than on the merits. Under *Glynn*, these nonclaimants without claims remain forever as such until evidence sufficient to justify merits determinations has been gathered. Again, under *Glynn*, in order to expedite the gathering process, each such nonclaimant without a claim is issued an evidentiary bank account in which is deposited all evidence gathered from the last point from which there has been a "final denial of the merits of a claim." *Glynn*, 6 Vet.App. at 528–29. Once the requisite evidence is gathered, each such nonclaimant without a claim is transformed, undergoing a metamorphosis similar to that of a caterpillar into a butterfly, into a genuine claimant with a genuine claim. In celebration of this wondrous event, a merits adjudication then occurs. (Although not specifically addressed in *Glynn*, I assume that, based on that case, if there has never been a final denial on the merits, one's evidentiary bank account contains all the evidence ever gathered, not simply that subsequent to such a final denial which has never occurred!)

### III.

The statutory authority offered by the majority in *Aguilar*, in *McGinnis*, in *Glynn*, and by the majority here consists of mere unanalyzed references to 38 U.S.C. §§ 5107(a), 5108, 7104(b), 7105(c). An examination of these statutes leads to the inescapable conclusion, however, that the so-called doctrines of nonclaimants, nonclaims, and evidence banks are mere illusions of Copperfieldian proportions, judicial fabrications without statutory foundation.

Section 5107(a) provides:

> [A] person who submits a *claim* for benefits ... shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that *the claim* is well grounded. The Secretary shall assist *such a claimant* in developing the facts pertinent to the claim.

(Emphasis added.) The only possible inferences that can be drawn from this language are that there is such a thing as a claim that is not well grounded (not a nonclaim) and that there is such a thing as a claimant who is not entitled to assistance (not a nonclaimant).

Section 5108 provides that "[i]f new and material evidence is presented or secured with respect to a *claim* which has been *disallowed*, the Secretary shall reopen *the claim* and review the former *disposition of the claim*." (Emphasis added.) A claim may be disposed of by disallowance on any number of alternative bases, including lack of jurisdiction, failure to meet filing period requirements, lack of status, lack of well-groundedness, lack of new and material evidence, or lack of entitlement on the merits. Nothing in this statutory language states, suggests, or remotely intimates that a disposition by disallowance occurs only where there has been an unfavorable merits adjudication. Nothing in this language states, suggests, or remotely intimates that an evidentiary bank account is ever issued. Nothing in this language states, suggests, or remotely intimates that where a claim is disposed of by a non-merits-based disallowance, the claim becomes a nonclaim. Quite the contrary, the double reference to a disallowed claim as "the claim" affirmatively refutes the notion of a nonclaim.

Section 7104(b) provides that "[e]xcept as provided in section 5108 of this title, when a *claim* is *disallowed* by the [BVA], *the claim* may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." (Emphasis added.) Nothing in this statutory language

states, suggests, or remotely intimates that a claim can be disallowed only on the merits. Nothing in this language states, suggests, or remotely intimates that when a claim is disallowed on any basis other than on the merits, the claim becomes a nonclaim. And again, to the contrary, the reference to a disallowed claim as "the claim" affirmatively refutes the notion of a nonclaim.

Section 7105(c) provides:

If no notice of disagreement is filed in accordance with this chapter within the prescribed period, the *action or determination* shall become *final* and *the claim* will not thereafter be reopened or allowed, except as may otherwise be provided....

(Emphasis added.) Nothing in this statutory language states, suggests, or remotely intimates that an action may be taken or determination made only on the merits. As with dispositions by disallowance, discussed *supra*, an action or determination may be predicated on many alternative bases, including any of those indicated above. Nothing in this language states, suggests, or remotely intimates that once a non-merits-based adverse action is taken or adverse determination made, such action or determination makes the claim a nonclaim. And once again, to the contrary, the use of the words "final" and "the claim" suggests that the claim retains status as a finally acted-upon or determined claim (not a nonclaim), regardless of the basis of such action or determination, until it may later be reopened or allowed.

## IV.

In that the majority is only remanding this matter for compliance with 38 C.F.R. § 3.203(c) and is thus not deciding this appeal on the merits, I am surprised that, consistent with its view of nonclaimants, nonclaims, and evidence banks, it has not declared that because appellant is not yet entitled to a merits review by the Court, he is a nonappellant, the decision it is issuing is a nondecision, and the record on appeal is part of a record bank account usable in any future appeal here and extinguishable only at such time as the Court may decide appellant's appeal on the merits.