Anchong K. LARUAN, Appellant,

v.

Togo D. WEST, Jr., Acting Secretary
of Veterans Affairs, Appellee.

No. 96–179.

United States Court of Veterans Appeals.

Feb. 3, 1998.

Anchong K. Laruan, pro se.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and Vito A. Clementi, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, HOLDAWAY, IVERS, STEINBERG, and GREENE, Judges.

NEBEKER, Chief Judge, filed the opinion of the Court. KRAMER and STEINBERG, Judges, filed an opinion concurring in part and dissenting in part.

NEBEKER, Chief Judge:

The pro se appellant, Anchong K. Laruan, appeals a February 9, 1996, decision of the Board of Veterans' Appeals (BVA or Board) which concluded that new and material evidence had not been submitted to reopen his claim of entitlement to veterans benefits. Upon consideration of the briefs of the parties and the record on appeal, the Court holds that the appellant has failed to establish the requisite threshold status as a veteran by a preponderance of the evidence. Accordingly, the "order" portion of the Board's decision (*see* 38 U.S.C. § 7104(d)(2)) is affirmed, though the reasons given for the denial of relief by the Board were incorrect.

## I. FACTS

Mr. Laruan served in the Philippine Army from March 1945 to June 1946. Record (R.) at 85. His military record reveals that from March 1 to June 21, 1946, Mr. Laruan was absent without leave (AWOL). R. at 74. He was thereafter discharged under dishonorable conditions. *See* R. at 74, 77, 81. In 1951, he sought service connection for a gunshot wound and for injuries resulting from a vehicle accident in 1946. R. at 46–48. His application alleged that his separation from the Army in March 1946 was honorable. R. at 46. During development of his claim, the regional office (RO) discovered the character of Mr. Laruan's discharge. In an administrative decision dated January 17, 1952, the RO found "that the veteran's discharge is under dishonorable condition[s] under the [applicable] provisions ... since his unauthorized absence is wilful and persistent misconduct and, further, the unauthorized absence is tantamount to desertion." R. at 98. The RO informed the appellant that he was "not entitled to any benefit administered by [VA]" by virtue of the dishonorable discharge. R. at 100.

Thereafter, Mr. Laruan periodically asserted that he was either not informed of the character of his discharge, or that he in fact had received an honorable discharge. *See* R. at 109, 114, 119, 123, 127. VA repeatedly responded by informing the appellant that his discharge was nonqualifying for veterans benefits, and that his recourse was with the Department of the Army. *See* R. at 112, 117, 121, 125, 129. In 1992, he submitted affidavits from friends to the effect that in 1945, he suffered an unspecified mental disorder and consequently, his unauthorized absence was a psychotic reaction. R. at 135. In another affidavit, Dr. Ponciano Lloren, who stated that he was assigned as a physician with the appellant's company, recalled that the examiner's diagnosis of Mr. Laruan in February 1946 was post-traumatic stress disorder, psychotic reaction, but that the "patient's illness improved" by June 1946. R. at 160. Also submitted was a purported "Affidavit from Philippine Army Personnel" dated 1946. R. at 165. The "Affidavit" asserted that the appellant incurred insanity, was advised to seek treatment, and that he tried to return to

his unit after his recovery but that the unit had been demobilized. *Id.* Also proffered was a photocopy of an October 1983 certification from the Philippine Ministry of National Defense showing that he was discharged on March 8, 1946. R. at 16–17.

In the February 1996 decision here on appeal, the Board concluded that new and material evidence had not been submitted to reopen his claim of eligibility for veteran's benefits. R. at 5–13. The Board found that the submitted documents were inherently untrue when viewed with all evidence of record, and further that his claims of mental illness resulting from a head injury were incredible, given that the earlier medical records and affidavits make no mention of such a disorder. *Id.* The Board denied reopening the claim.

Before this Court, Mr. Laruan requests that the Board's decision be vacated, that his dishonorable discharge be "dissolved" and "vacated," and that his claim be reopened. Appellant's Brief at 1–5. The Secretary urges the Court to vacate the Board's decision and dismiss the appeal since Mr. Laruan has failed to establish basic eligibility for VA benefits by a preponderance of the evidence.

## II. ANALYSIS

### A. Character of Discharge

■ If an applicant for VA benefits does not submit evidence of his military service, or the evidence submitted is insufficient, VA must request verification of service from the service department. 38 C.F.R. § 3.203(c)(1996); *Sarmiento v. Brown,* 7 Vet. App. 80 (1994). Although "service department findings are binding on VA for purposes of establishing service in the U.S. Armed Forces," *Duro v. Derwinski,* 2 Vet. App. 530, 532 (1992), when a claimant submits evidence establishing that the service department's certification was based upon erroneous information, a second verification may be required. *Sarmiento,* 7 Vet.App. at 85 (holding that 38 C.F.R. § 3.203(c) obligates VA to request verification of service where appellant submitted evidence that prior negative certification was based on a misspelling of his name). The record reflects

that the service department, on more than one occasion, has informed both VA and the veteran that his discharge was dishonorable, and as such, nonqualifying for VA benefits. VA, and indeed this Court, are without authority to abrogate the statutory requirement of qualifying service. *Duro, supra.*

Accordingly, the Court holds that to the extent that Mr. Laruan disagrees with the assigned discharge classification of his military service, he must raise that concern with the Department of the Army, not VA. *See* 10 U.S.C. § 1552(a)(1) (Secretary of a military department may correct any of his department's military records "to correct an error or remove an injustice"); *see also Lauginiger v. Brown,* 4 Vet.App. 214, 216 (1993) (veteran must look to service department, not VA, in dispute over whether service records of radiation exposure are complete).

### B. Remedy

■ The remaining issue, and the one for which the en banc consideration was appropriate, is the disposition of the BVA decision here on appeal. The Secretary urges that under *Sarmiento, supra,* the Board decision must be vacated, and the appeal dismissed. Under this theory, because the appellant had never achieved threshold status as a benefits-eligible veteran, there was never any title 38 claim to adjudicate, and "any adjudications regarding the underlying merits of the claim are a nullity." Secretary's Brief at 8. However, our en banc opinion in *Edenfield v. Brown,* 8 Vet.App. 384, 390 (1995), arguably suggests that, unless to do so would prejudice the appellant, the Board's "erroneous" disallowance of the claim should be affirmed. Accordingly, the issue presented for review is whether the analysis and remedy set forth in *Sarmiento* has been overruled by *Edenfield.*

#### 1. *Edenfield* and *Sarmiento*

In *Sarmiento,* the Court vacated a BVA decision which had found that the appellant had not submitted new and material evidence sufficient to reopen his claim for entitlement to VA benefits. *Sarmiento,* 7 Vet.App. at 86. There, the Department of the Army could not verify the appellant's service with the Philippine Commonwealth Army, the United

States Armed Forces in the Far East, or recognized guerrilla forces. Mr. Sarmiento argued that the Secretary had breached his duty to assist as found in section 5107(a), title 38, United States Code. In that case, the majority opined that "the claimant," as referred to in section 5107(a), "is one whose eligibility has been established and who has submitted a well-grounded claim." *Id.* The Court held that the Board's "reopening" analysis was inapplicable, reasoning thus:

> Because appellant "never attain[ed] the status of claimant," [*Aguilar v. Derwinski,* 2 Vet.App. 21, 23 (1991) ] he did not submit any claim, well grounded or otherwise, and therefore there was no finally denied claim which could have been reopened under 38 U.S.C. § 5108.... The Board's refusal to reopen for lack of new and material evidence cannot be affirmed because there simply was no finally denied claim which could be reopened under 38 U.S.C. § 5108.

*Sarmiento,* 7 Vet.App. at 83–84.

In *Edenfield,* the Court addressed the then-extant conflict over the "appropriate disposition by this Court when the Board erroneously concludes that a claim is well grounded and then proceeds to consider the merits and disallows the claim." *Edenfield,* 8 Vet.App. at 388. *Edenfield* does not address the present issue regarding preliminary status, or distinguish between claimants who are bona fide veterans or their dependants and survivors, and claimants not entitled to such a designation. In the *Edenfield* analysis, the Court examined the issue of appellants who filed claims that were not well grounded, and concluded that "[a]s a matter of law, a claim that is not well grounded is nevertheless a claim." *Id.* at 389. There, the claimant's status as a veteran was not at issue. The Court held that the appropriate remedy was to "affirm rather than vacate a BVA decision disallowing a claim on the merits where the Court finds the claim to be not well grounded." *Id.*

Of further interest in the present case, the Court notes that in arriving at its holding, the *Edenfield* opinion references *Sarmiento* in a *"but see"* citation, implying that the cited authority clearly supports a proposition contrary to the main proposition. *Id.* Thus

it appears that *Edenfield* did not overrule the holding in *Sarmiento,* but rather emphasized the difference between a veteran who attempts to submit a well-grounded claim, and a person who attempts to establish eligibility status to claim veterans benefits. *See also Tulingan v. Brown,* 9 Vet.App. 484 (1996); *Aguilar, supra.*

### 2. Proving Status by a Preponderance of the Evidence

The history of the applicability of rulemaking provisions found in the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.,* to the VA is addressed in the Court's decision in *Fugere v. Derwinski,* 1 Vet.App. 103, 107–08 (1990). The Court has not addressed the issue of the applicability of the APA to the VA adjudication process. *See Thurber v. Brown,* 5 Vet.App. 119, 125 (1993) (discussing 5 U.S.C. §§ 554, 556, and requiring BVA to notify claimant of evidence to be used and of reliance proposed to be placed on it, and giving claimant opportunity to respond to such notification); *see also* 5 U.S.C. §§ 554, 556(d), (e); *but see United States Lines v. Federal Maritime Comm'n,* 584 F.2d 519, 536 (D.C.Cir.1978) (adjudication provisions "do not apply unless Congress has clearly indicated that the 'hearing' required by statute must be a trial-type hearing on the record"). Nevertheless, the Court believes that 5 U.S.C. § 556 is worthy of mention:

> (d) Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof.... A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts....

*See also* H.R.Rep. No. 1980, 79th Cong., 2d Sess., 37 (1946) ("Where there is evidence pro and con, the agency must weigh it and decide in accordance with the preponderance."). In *Steadman v. Securities and Exchange Commission (SEC),* 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981), the Supreme Court affirmed the SEC's use of the preponderance of the evidence standard, and held that the legislative history of the APA reflects a decision by Congress that the pre-

ponderance of evidence standard applied to support a finding urged by a party with the burden of proceeding. *Id.* at 101–02, 101 S.Ct. at 1007–08; *see also Sea Island Broadcasting Corp. of S.C. v. Federal Communications Commission,* 627 F.2d 240 (1980), *cert. denied,* 449 U.S. 834, 101 S.Ct. 105, 66 L.Ed.2d 39 (1980) ("The use of the 'preponderance of evidence' standard is the traditional standard in civil and administrative proceedings. It is the one contemplated by the APA").

■ In *Aguilar,* the Court instructed that before becoming entitled to "status" as a claimant for VA benefits, an appellant had first to demonstrate by a preponderance of the evidence (1) that he or she was a "veteran," or (2) "veteran" status for the person upon whose military service the claim for VA benefits was predicated. *Aguilar,* 2 Vet.App. at 23. Only after predicate status is established does a claimant come under the aegis offered by title 38 to "veterans." Today, the Court explains the rationale for requiring a preponderance of the evidence of predicate veteran status prior to entitlement to the procedural advantages found in title 38.

In *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), the Supreme Court addressed the issue of whether the standard of review in an indefinite commitment case was "beyond a reasonable doubt" or "by clear and convincing evidence." The Court examined the historical importance of "standard of review" and included the following discussion:

The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." ... The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

. . . .

At one end of the spectrum is the typical civil case. . . . Since society has a minimal concern with the outcome of such private suits, plaintiff's burden of proof is a mere preponderance of the evidence. The liti-

gants thus share the risk of error in roughly equal fashion.

. . . .

[T]he ultimate truth as to how the standards of proof affect decisionmaking may well be unknowable, given that factfinding is a process shared by countless thousands of individuals throughout the country. . . . Nonetheless, even if the particular standard-of-proof catchwords do not always make a great difference in a particular case, adopting a "standard of proof is more than an empty semantic exercise." ... In cases involving individual rights, whether criminal or civil, "[t]he standard of proof [at a minimum] reflects the value society places on individual liberty."

*Id.* at 423–25, 99 S.Ct. at 1808–09 (citations omitted). In *Gilbert v. Derwinski,* 1 Vet. App. 49, 53 (1990), this Court examined the benefit of the doubt doctrine in light of other standards of proof, i.e., evidentiary thresholds which a litigant must achieve in order to prevail. In discussing section 5107(b) the Court stated the following:

The statutory "benefit of the doubt" standard of proof for cases dealing with veterans benefits is at the farthest end of the spectrum, beyond even the "fair preponderance" standard. . . . [A] veteran need only demonstrate that there is an "approximate balance of positive and negative evidence" in order to prevail; entitlement need not be established "beyond a reasonable doubt," by "clear and convincing evidence," or by a "fair preponderance of evidence." ... This unique standard of proof is in keeping with the high esteem in which our nation holds those who have served in the Armed Services. It is in recognition of our debt to our veterans that society has through legislation taken upon itself the risk of error when, in determining whether a veteran is entitled to benefits, there is an "approximate balance of positive and negative evidence." By tradition and by statute, the benefit of the doubt belongs to the veteran.

*Gilbert,* 1 Vet.App. at 54.

### 3. Definition of "Veteran" under 38 U.S.C. § 101(2)

The term "veteran" is defined in title 38 at section 101(2) as "a person who served in the

active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable." 38 U.S.C. § 101(2). Thus, an other than dishonorable discharge is a prerequisite to designation as a title 38 "veteran." *See* 38 C.F.R. § 3.12. Under this Court's case law and VA regulations, there is a significant difference between a bona fide veteran or the dependants and survivors of veterans, and a person *claiming* to be a member of that preferred class as the term "veteran" is statutorily understood. *See* 38 U.S.C. 101(2), 38 C.F.R. §§ 3.1(d), 3.12, 3.14 (1996).

The Department of Veterans Affairs was created to administer the laws applicable to a specific class: veterans and the survivors and dependants of veterans. *See e.g.,* H.R.Rep. No. 963, 100th Cong., 2d Sess. 9 (1988), *reprinted in,* 1988 U.S.C.C.A.N. 5782, 5790–91, citing Government Printing Office, Federal Laws Relating to Veterans of Wars of the United States 25 (1932) (noting that in the United States, the Continental Congress "promised to provide pensions to those disabled in the cause of American independence"). Section 301 states that the "purpose of the Department [of Veterans Affairs] is to administer the laws providing benefits and other services to *veterans* and the dependents and the beneficiaries of *veterans.*" 38 U.S.C. § 301 (emphasis added). Section 511 requires that the Secretary "decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to *veterans* or the dependents or survivors of *veterans.*" 38 U.S.C. § 511 (emphasis added). All provisions relating to entitlement for benefits administered by VA are available only to veterans or veterans' survivors and dependents. *See, e.g.,* 38 U.S.C. §§ 1110, 1121, 1131, 1141.

■ Thus, unless a claimant first carries the initial burden of establishing status as a veteran or veteran status for the person upon whose military service the desired benefits are predicated, the laws administered by the Secretary and the resources of the VA are not applicable or available. Designation as a veteran bestows certain procedural advantages and evidentiary benefits which are un-available to nonveteran claimants. VA's "duty to assist" (38 U.S.C. § 5107(a)) and the benefit of the doubt doctrine (38 U.S.C. § 5107(b)) are reserved for veterans and their dependents and survivors. *See Aguilar,* 2 Vet.App. at 23 ("Before applying for benefits, a veteran must submit evidence of service and the character of the veteran's discharge. . . . A veteran or spouse who fails to submit appropriate evidence never attains the status of claimant."); *Holmes v. Brown,* 10 Vet.App. 38, 42 (1997) (declining to apply the benefit-of-the-doubt doctrine where claimant has not first established status); *see e.g., Dedicatoria v. Brown,* 8 Vet.App. 441, 443 (1995); *Brillo v. Brown,* 7 Vet.App. 102, 105 (1994); *Sandoval v. Brown,* 7 Vet.App. 7, 9 (1994); *cf. Camarena v. Brown,* 6 Vet.App. 565, 567–68 (1994) (discussing the plain meaning of "veteran" as found in 38 U.S.C. § 101(2), and concluding "that Congress did not say or intend to say that only those receiving 'dishonorable discharges' would be denied *veteran status.*" (emphasis added)). *See also Gilbert,* 1 Vet.App. at 53 ("A unique standard of proof applies in decisions on claims for veterans benefits. Unlike other claimants and litigants, pursuant to [38 U.S.C. § 5107(b)], a *veteran* is entitled to the 'benefit of the doubt' when there is an 'approximate balance of positive and negative evidence.'" (emphasis added)).

■ As is the case with the benefit of the doubt doctrine and the Secretary's duty to assist, the evidentiary thresholds inherent in the concepts of what evidence will "well ground" a claim and what constitutes the requisite "new and material" evidence required to reopen a previously disallowed claim, are similarly relaxed by virtue of their application to veterans and other *eligible* claimants. *See Murphy v. Derwinski,* 1 Vet. App. 78, 81 (1990) (applying a "common sense construction" to the definition of a well-grounded claim); *see also Evans v. Brown,* 9 Vet.App. 273, 282–84 (1996) (setting forth analysis applicable to determinations of what evidence constitutes "new and material" for purposes of reopening and discussing presumption of credibility afforded to newly presented evidence); *see generally Ivey v. Derwinski,* 2 Vet.App. 320, 326 (1992) (Stein-

berg, J., concurring) (comparing threshold requirements for well-grounded claims and claims to reopen). Having only to submit a well-grounded claim (as opposed to the burden of going forward with preponderating evidence as seen in APA-regulated cases, *see Steadman, supra* ) is an advantage afforded to veterans by virtue of their status. *See Gilbert, supra.* Thus, as the lower threshold burden of producing a well-grounded claim is available only to veterans, it follows that *establishing* such veteran status must satisfy the preponderance of the evidence standard common in civil and administrative litigation. In enacting title 38, Congress could not have intended that persons without requisite veteran status would benefit from the statutory presumptions and enactments reserved for veterans. Indeed, and consistent with this nation's policy reasons for venerating veterans, without predicate veteran status there is no cognizable claim to be made before the Department or this Court under title 38.

Accordingly, our disposition here is consistent with the earlier holdings in *Aguilar, Sarmiento,* and *Edenfield,* all *supra.* However, in *Linsday v. Brown,* 9 Vet.App. 225 (1996), this Court's inconsistent rationale resulted in affirmance of a Board *holding* that the claim was not well grounded for lack of status. That rationale is at odds with our holding herein, and to that extent, *Linsday* is overruled. *See Bethea v. Derwinski,* 2 Vet. App. 252, 254 (1992). *See also Robinson v. United States,* 272 F.2d 554 (D.C.Cir.1959) (holding of appellate court panel is binding law unless and until superior tribunal, including en banc court, makes determination that strips ruling of validity); *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).

### III. CONCLUSION

Accordingly, the order denying relief contained in the Board's February 9, 1996, decision is AFFIRMED for the reasons which are contained herein, and which are at divergence with those given by the Board. 38 U.S.C. § 7261(a)(3)(C).

Our dissenting colleagues, with apparent umbrage, have stated their views and are unable to sway the majority. As a matter of fact, they have been stating their views on these issues since 1991, so their disagreement is hardly new or in need of further illumination. *See, e.g., Aguilar,* 2 Vet.App. at 23–24 (Kramer, J., concurring); *Scott v. Principi,* 3 Vet.App. 352, 356–57 (1992) (Kramer and Steinberg, JJ., concurring separately); *Rogers v. Derwinski,* 2 Vet.App. 419, 422 (1992) (Steinberg, J., concurring). To the extent they are concerned with our internal process, note should be taken that a flat disagreement exists which is resolved by a majority vote. That being so, we should avoid needlessly consuming more time and resources on additional briefing and oral argument (none would be possible in this case without obtaining an amicus). Our charge is to rule on issues which define the veterans benefits laws and process, with which others are rightfully and properly concerned. Where disagreement exists, we should declare it and proceed to decision. The appellate process is to facilitate reasoned decisions. It is not for protracted and delaying negotiation where the issue is clearly defined and further debate would be but a waste of time—ours and those concerned with our decisions. Indeed, the Supreme Court of the United States frequently renders summary disposition where merits doubt or disagreement exists together with a desire for plenary deliberation by a minority of that Court. *See e.g., Mazurek v. Armstrong,* — U.S. —, —, 117 S.Ct. 1865, 1869, 138 L.Ed.2d 162 (1997).

KRAMER and STEINBERG, Judges, concurring in part and dissenting in part:

Because we believe that the appellant has not submitted new and material evidence to reopen his claim of entitlement to veterans benefits, we concur only in the result of affirming the Board's February 9, 1996, decision and its "denial of relief" pursuant to 38 U.S.C. § 7104(d)(2). We otherwise dissent.

### I.

The majority purports to overrule *Linsday v. Brown,* 9 Vet.App. 225, 228–29 (1996), to the extent that it holds that status is an element of a claim. The majority would have us believe that the denial of status constitutes the denial of a nonclaim and that the

denied claimant is a nonclaimant. In doing so, the majority relies on statute and case law that have never been applied to VA adjudications, and verbatim quotes (without quotation marks) from *Thurber v. Brown,* 5 Vet.App. 119, 125 (1993). The opinion, however, leaves out that part of the quotation (underlined below) that expresses the contrary view. In order to provide the complete picture, we will put the author's quote in proper context:

> The Court has not addressed the issue of the applicability of the APA to the VA adjudication process, and we express no opinion in this decision. *See* 5 U.S.C.[ ] §§ 554, 556(d), (e) (West 1990 & Supp. 1993); *but see United States Lines v. Federal Maritime Comm'n,* 584 F.2d 519, 536 (D.C.Cir.1978) (adjudication provisions "do not apply unless Congress has clearly indicated that the 'hearing' required by statute must be a trial-type hearing on the record"); *Barefield v. Byrd,* 320 F.2d 455, 457 (5th Cir.1963) ( [Secretary] is not bound to conform to APA provisions since title 38 of the United States Code does not require adjudications "to be determined on the record after opportunity for an agency hearing"). The Court notes, however, that the legislative history of the VJRA indicates that, while the Senate bill would have provided additional statutory rights with respect to notice and an opportunity to be heard, the compromise agreement adopted the Senate position only with respect to hearings before traveling sections of the BVA, preferring, in general, to rely on existing "informal procedures" and "fundamental ... due process rights," and specifically stating "that the title 5 procedures relating to adjudications continue to be inapplicable." *See* EXPLANATORY STATE-MENT, 100th Cong., 2d Sess. (1988), *reprinted in* 1988 U.S.C.C.A.N. 5842–44. Nevertheless, the Court believes that 5 U.S.C.[ ] § 556 is worthy of at least mention.

*Thurber, supra* (underlining added). Moreover, the majority inexplicably fails to address Chief Judge Archer's recent concurring opinion in *Grantham v. Brown,* 114 F.3d 1156, 1160 n. 1 (Fed.Cir.1997) (Archer, C.J., concurring), which supports *Linsday* by con-

cluding that status is an issue or element of a claim, or this Court's own en banc conclusion to the same effect in *West v. Brown,* 7 Vet. App. 329, 332 (1995) (en banc) ("the veteran's status" is one element of a claim), *overruled on other grounds by Grantham v. Brown,* 114 F.3d 1156 (Fed.Cir.1997), and *Barrera v. Gober,* 122 F.3d 1030 (Fed.Cir.1997). *See also Aguilar v. Derwinski,* 2 Vet.App. 21, 23–24 (1991) (Kramer, J., concurring) (disagreeing with majority's suggestion "that a different ... standard of proof applies to establishing a claimant's status as a veteran or a veteran's spouse from that required to decide the merits of other issues material to a claim"); *West, supra* (quoting with approval and citing as *"See" Sarmiento v. Brown,* 7 Vet.App. 80, 87 (1994) (Kramer, J., concurring) ("status [is] merely one element of a claim to be established in the same way as any other element involved in a claim")).

We reiterate from Judge Kramer's concurring opinion in *Sarmiento:*

> An examination of [38 U.S.C. §§ 5107(a), 5108, 7104(b), and 7105(c) ] leads to the inescapable conclusion ... that the so-called doctrines of nonclaimants ... [and] nonclaims ... are mere illusions of Copperfieldian proportions, judicial fabrications without statutory foundation.
>
> Section 5107(a) provides:
>
>> [A] person who submits a *claim* for benefits ... shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that *the claim* is well grounded. The Secretary shall assist *such a claimant* in developing the facts pertinent to the claim.
>
> (Emphasis added.) The only possible inferences that can be drawn from this language are that there is such a thing as a claim that is not well grounded (not a nonclaim) and that there is such a thing as a claimant who is not entitled to assistance (not a nonclaimant).
>
> Section 5108 provides that "[i]f new and material evidence is presented or secured with respect to a *claim* which has been *disallowed,* the Secretary shall reopen *the claim* and review the former *disposition* of

*the claim.*" (Emphasis added.) A claim may be disposed of by disallowance on any number of alternative bases, including lack of jurisdiction, failure to meet filing period requirements, lack of status, lack of well-groundedness, lack of new and material evidence, or lack of entitlement on the merits. Nothing in this statutory language states, suggests, or remotely intimates that a disposition by disallowance occurs only where there has been an unfavorable merits adjudication.... Nothing in this language states, suggests, or remotely intimates that where a claim is disposed of by a non-merits-based disallowance, the claim becomes a nonclaim. Quite the contrary, the double reference to a disallowed claim as "the claim" affirmatively refutes the notion of a nonclaim.

Section 7104(b) provides that "[e]xcept as provided in section 5108 of this title, when a *claim* is *disallowed* by the [BVA], *the claim* may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered." (Emphasis added.) Nothing in this statutory language states, suggests, or remotely intimates that a claim can be disallowed only on the merits. Nothing in this language states, suggests, or remotely intimates that when a claim is disallowed on any basis other than on the merits, the claim becomes a nonclaim. And again, to the contrary, the reference to a disallowed claim as "the claim" affirmatively refutes the notion of a nonclaim.

Section 7105(c) provides:

If no notice of disagreement is filed in accordance with this chapter within the prescribed period, the *action or determination* shall become *final* and *the claim* will not thereafter be reopened or allowed, except as may otherwise be provided....

(Emphasis added.) Nothing in this statutory language states, suggests, or remotely intimates that an action may be taken or determination made only on the merits. As with dispositions by disallowance, discussed *supra,* an action or determination may be predicated on many alternative bases, including any of those indicated above. Nothing in this language states, suggests, or remotely intimates that once a non-merits-based adverse action is taken or adverse determination made, such action or determination makes the claim a nonclaim. And once again, to the contrary, the use of the words "final" and "the claim" suggests that the claim retains status as a finally acted-upon or determined claim (not a nonclaim), regardless of the basis of such action or determination, until it may later be reopened or allowed.

*Sarmiento,* 7 Vet.App. at 88–89 (Kramer, J., concurring).

In addition, 38 U.S.C. § 5107(b) provides: When, after consideration of all evidence and material of record in a case before the Department with respect to benefits under laws administered by the Secretary, there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant.

In construing a statute, a good place to start would be with the statute. *See Gardner v. Brown,* 5 F.3d 1456, 1458 (Fed.Cir. 1993) ("starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter" (internal quotation marks omitted)), *aff'd, Brown v. Gardner,* 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). Yet, the majority focuses every place other than on the applicable and dispositive provisions of 38 U.S.C. § 5107, which is entitled "Burden of proof; benefit of the doubt." That section occupies the field as to allocations of burdens of proof on those seeking VA benefits. Not satisfied with the determinative provisions of the statute, the majority essentially ignores them and then usurps the legislative role by rewriting the statute to suit its policy preferences.

Hence, we have a majority opinion that, in essence, amends section 5107—although actually ignoring its text—by changing "person" and "claimant" to "veteran or eligible dependent" in subsection (a) so that the duty to assist does not attach to the status question until the claimant proves status by a

preponderance of evidence and does so *at the very outset.* Section 5107(a) is the only place where the statute puts the burden on a VA claimant, and that burden is expressed only in terms of what we have determined in our case law is a requirement for a claimant to submit evidence that the claim is "plausible or capable of substantiation." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). Obviously, the well-groundedness requirement does not require the claimant to submit sufficient evidence as to each element of a claim so as to reach equipoise on each such element, including status, let alone to reach a preponderance. It would be bad enough if the Court were "merely" reading "status" out of section 5107(b)—so that at the *merits* stage a preponderance was necessary for this one element of a claim—but the Court is also reading status out of section 5107(a) so that there can be no duty to assist as to that element even when there is enough evidence of status for the claim to be well grounded ("plausible") on that element.

Furthermore, it should be kept in mind that status entails far more than just the nature of service by a particular would-be veteran. It entails all matter of items surrounding character of service, dependency, age, marital status, dependent-child helplessness, and so forth, as to which the duty to assist in section 5107(a) and the equipoise doctrine in section 5107(b) can make a real difference in case outcome. Moreover, the "preponderance" burden being imposed by the Court here does more than supposedly reduce the possible success of fraudulent claims by nonveterans; it also reduces the possible success of those claims brought by actual veterans, with qualifying service, who, for whatever reason (lost or destroyed records probably chief among them), are prevented from establishing veteran status by a preponderance of the evidence. In short, the policy preferences driving the opinion, in trying to preserve the benefits of sections 5107(a) and (b) for actual veterans, necessarily will result in depriving some of those very veterans of what they have earned.

In addition, 38 U.S.C. § 5104(a) provides: "In the case of a decision ... affecting the provision of benefits to a *claimant,* the Sec-

retary shall ... provide to the *claimant* ... notice of such decision. The notice shall include an explanation of the procedure for obtaining review of the decision"; § 5104(b) provides that: "[w]here the Secretary denies a benefit sought, the notice required by subsection (a) shall also include (1) a statement of the reasons for the decision, and (2) a summary of the evidence considered ..."; and § 7105(d)(1) provides: "Where the *claimant* ... files a notice of disagreement with the decision of the agency of original jurisdiction, such agency will take such development or review action as it deems proper under the provisions of regulations not inconsistent with this title." (Emphasis added.) Thus, if the majority is serious about creating a nonclaim and nonclaimant in any situation where a negative determination is made as to status, it would appear that such a nonclaimant would not have the right to file an NOD with respect to a determination regarding the nonclaimant's nonclaim and would have no right to administrative and judicial review. Moreover, carried to its necessary (and illogical) conclusion, the majority's re-creation of nonclaimants with nonclaims seems to absolve VA of the responsibility even to issue any decision, thus—in this never-ending cycle—preventing "nonclaimants" from ever establishing veteran status. *See* 38 U.S.C. § 5104(a) (requiring Secretary to give "to a claimant" notice of benefits decision and statement of reasons for benefit denial and of appellate rights); *Sarmiento,* 7 Vet.App. at 83 ("[s]ince appellant never attained the status of claimant ... the Secretary was neither obligated to determine whether the appellant's claim was well grounded nor under a statutory duty to assist"). Such a result seems incomprehensible in a nation of laws. *See Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 166, 2 L.Ed. 60 (1803) ("where a specific duty is assigned by law, and individual rights depend upon performance of that duty, it seems equally clear that the individual who considers himself injured, has a right to resort to the laws of this country for a remedy").

Finally, the majority's effort to limit *Edenfield v. Brown,* 8 Vet.App. 384 (1995) (en banc), to matters involving lack of well

groundedness, so as not to apply it to matters involving status, is disingenuous. The clear message of *Edenfield* is that any decision to which an NOD may be filed is a decision as to a claim. *Id.* at 389 ("A claimant who files ... a claim, attaching *such evidence as he has,* is undeniably a claimant entitled to a disposition of his claim. Moreover, a decision disposing of that claim is subject to a Notice of Disagreement (NOD) and the internal VA appeal process triggered by an NOD."). The majority acknowledges that the nonclaim/nonclaimant analysis in the *Sarmiento panel* opinion is "contrary to the main proposition" in the *Edenfield en banc* opinion. *Ante* at 83. To immediately then conclude that *Edenfield* did not overrule *Sarmiento* is not only a non sequitur, it is pure poppycock. Of course, it was overruled *in that respect* as is shown by the entire *Edenfield* discussion at 8 Vet.App. at 389 [headnote 6], including the citation with approval of the concurring opinion in *Sarmiento,* and by the conclusion that "not-well-grounded claims are nevertheless claims."

## II.

Equally inexplicable as the holdings discussed in Part I, *supra,* is the majority's failure of logic in affirming the BVA decision, based on the appellant's purported failure to establish status as a veteran, despite the absence of any BVA finding that the appellant was not a veteran. Pursuant to 38 U.S.C. § 101(2), a "veteran" is defined as "a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable." *See also* 38 U.S.C. §§ 1110, 1131. In holding that the appellant "failed to establish ... status as a veteran," the majority appears to rely on its statement that "the service department, on more than one occasion, has informed both VA and the veteran that his discharge was dishonorable, and as such, nonqualifying for VA benefits." *Ante* at 81, 82. Although it is true that a dishonorable discharge pursuant to a sentence of a general court-martial would constitute an absolute bar to benefits, *see* 38 U.S.C. § 5303(a), a review of the record here reveals that the appellant neither received a court-martial nor a dishonorable discharge. Rath-

er, the appellant was "discharged without honor" ostensibly for approximately four months of absence without leave (AWOL). R. at 85. The question thus becomes whether, under the facts, he was not discharged "under conditions other than dishonorable," 38 U.S.C. § 101(2), i.e., whether the appellant was discharged under conditions other than honorable (OTH). Although the conditions under which an OTH discharge may be issued are not set forth by statute, they are set forth under 38 C.F.R. § 3.12 (1997). Given that the appellant was discharged without honor on the basis of approximately four months of AWOL, the only disqualifying provision potentially applicable to him under § 3.12 is that which authorizes an OTH discharge for willful and persistent misconduct. *See* 38 C.F.R. § 3.12(d)(4).

However, a review of the record reveals that, in its decision, the BVA made no findings under § 3.12 in general or § 3.12(d)(4) in particular, nor has the Court made any findings in this regard. Nor would it be appropriate for the Court to do so because determinations under § 3.12 and its paragraph (d)(4) are factual determinations that this Court reviews under a "clearly erroneous" standard. *See Struck v. Brown,* 9 Vet. App. 145, 153 (1996) (quoting *Stringham v. Brown,* 8 Vet.App. 445, 447 (1995) ("BVA's determination whether a discharge is based on willful and persistent misconduct is a matter of fact which the Court reviews under the 'clearly erroneous' standard of review")); *see also* 38 U.S.C. § 7261(a)(4); *Servello v. Derwinski,* 3 Vet.App. 196, 200–01 (1992) ("role of an appellate court is not to serve as a de novo factfinder"); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990).

Having ruled out lack of new and material evidence as a basis for affirming the BVA decision, and being restricted from making factual findings, the majority was left with no basis upon which to affirm the BVA decision, yet it has done so.

## III.

But the story becomes even more grim. Because the majority relies on the continuing viability of *Sarmiento* with respect to a sta-

tus determination, such a determination (assuming, contrary to the majority's logic, that one would have to be made, *see* Part I, *supra*) not only must be made de novo whenever requested by what the majority would describe as a nonclaimant but also will never attain finality. ("Since [the] appellant never attained the status of claimant, he never submitted a claim....." *Sarmiento,* 7 Vet.App. at 83.) By purporting to treat a status question differently from any other element of a claim, rather than the Court simply affirming the BVA decision for lack of new and material evidence, the majority's rationale requires, as indicated in Part II, *supra,* a new BVA decision—in other words, double work on behalf of the nonveteran. Moreover, this double work never ends and repeats itself over (triple work) and over (quadruple work) and forevermore, because so long as a so-called nonclaim-filing-nonclaimant has the tenacity to assert "status," such a nonclaimant will be entitled to continuing de novo adjudication. In this regard, despite the majority's patriotic pronouncements ("In enacting title 38, Congress could not have intended that persons without requisite veteran status would benefit from the statutory presumptions and enactments reserved for veterans" and "consistent with this nation's policy reasons for venerating veterans, without predicate veteran status there is no cognizable claim to be made before the Department or this Court under title 38," *ante* at 86), the majority's rationale thus provides more protections for nonveterans than for veterans. (Interestingly, the pro-*veteran* congressional sentiment that the majority purports to be vindicating is not quite accurately expressed. In the most recent characterization of VA's adjudication system, the House Committee on Veterans' Affairs stated: "Given the *pro-claimant bias* intended by Congress throughout the VA system, the Committee concludes that this legislation is necessary and desirable to ensure a just result in cases where such error has occurred." H.R.REP. No. 105–52, 105th Cong., 1st Sess. (Apr. 14, 1997) (emphasis added).)

## IV.

Finally, the majority inexplicably renders its wisdom without benefit of a conference of the judges, briefing, or oral argument. In so doing, the majority, without providing reasons for doing so, disregards this Court's established procedure of "usually conven[ing] a conference or ... schedul[ing] oral argument" when "en banc consideration or review is ordered." U.S. VET.APP. INTERNAL OPERATING PROCEDURES (IOP), V.(a)(4), 10 Vet.App. LXXII. A conference, briefing, and oral argument might have provided enlightenment; in this case, left to itself, the majority has woven and donned a nonexistent cloth of nonclaimants and nonclaims from nonexistent statutory language. Although avoiding any such enlightenment, the majority must still face the exposure of public scrutiny and, it is to be hoped, review on appeal, that will lead to the revelation:

> "But he doesn't have anything on!" said a little child.

HANS CHRISTIAN ANDERSEN, *The Emperor's New Clothes,* in THE SNOW QUEEN AND OTHER TALES 72, 77 (Pat Shaw Iversen trans., The New American Library 1966).