KRAMER and STEINBERG, Judges,
concurring:
We concur wholeheartedly in the excellent majority opinion but write separately to address the dissenting opinions. Initially, we wish to express our emphatic agreement with the sentiments, eloquently expressed by the dissenters and the distinguished sources upon which they rely, regarding the traditional and continuing importance of venerating and providing for veterans (and their eligible family members). We also cannot deny the obvious allure of creating a system where the claims of honest, deserving veterans (and honest, deserving individuals claiming through veterans) are adjudicated in a more benevolent manner than the claims of dishonest, less deserving claimants. However, in an attempt to construct such a system, it appears that our dissenting *328 colleagues have become lost in a maze of conflicting arguments and, even more importantly, have failed to recognize that, simply put, there is no statutory or regulatory authority to support their views. Indeed, the only scintilla of support for the dissenters’ position derives from the flawed caselaw that they themselves have woven out of whole cloth as a mechanism to implement their policy views.
In attacking the majority’s application of a new and material evidence standard to forfeiture decisions, our dissenting colleagues admonish the majority for failing to recognize that, pursuant to 38 U.S.C. § 6103(a) “ ‘all rights, claims and benefits under all laws administered by the Secretary,’ ” including the procedural benefits of 38 U.S.C. § 5108, are lost upon forfeiture. Infra at 336 (quoting 38 U.S.C. § 6103(a) with emphasis added). The dissenters forcefully assert that there is “one and only one exception to the emphatic ‘all ... all’ proscription” of section 6103(a) — the exception pertaining to insurance benefits. Yet they further proclaim that, although a forfeitee loses “ ‘all’ title 38 procedural ... rights and benefits afforded to veterans and those eligible family members,” the loss of such procedural rights does not prevent a forfeitee from having title 38 benefits, rights, and claims restored by “submitting preponderating evidence to show that the factual basis for the forfeiture decision was wrong.” Infra at 340. The dissenters then conclude that the majority, in applying section 5108 to forfeiture decisions, has given away rights “to which only veterans are entitled” and which are “reserved for claimants untainted by fraud.” For many reasons, as discussed below, we find the dissenters’ analysis to be severely flawed and unpersuasive.
First, because the dissenters conclude that procedural rights are among the rights lost under section 6103(a), and because they maintain that the insurance exception is the sole exception to the statutory mandate that all rights are forfeited under section 6103(a), the logical conclusion of the dissenters’ argument would be that a forfeiture decision, once final, would remain forever in effect — there being no available procedural method pursuant to which a forfeitee could attack the forfeiture decision. Yet, the dissenters, perhaps in an attempt to avoid this potentially unjust result, astoundingly then attempt to create a new (title 38?) procedural right that will survive forfeiture under their construct.
Second, the dissenters cite section 511 as the basis for the dubious new procedure they create, thus acknowledging that forfeiture matters are subject to a decision by the Secretary under 38 U.S.C. § 511(a) and thus apparently conceding that title 38 does indeed have some applicability to those who have forfeited their status as benefits-eligible claimants, notwithstanding their thesis that the “all ... all” proscription of section 6103(a) refers to all laws under title 38. They fail to recognize, however, that once there has been a final decision on such a matter, title 38 provides express, limited paths for again obtaining an adjudication on that same matter. In the absence of clear and unmistakable error (see 38 U.S.C. §§ 5109A, 7111 (allowing revision of decisions by the Secretary or the Board on grounds of clear and unmistakable error)), sections 5108 and 7104 and 7105(c) provide only one method — the submission of new and material evidence — for obtaining another adjudication once a matter has been finally disallowed. See 38 U.S.C. §§ 5108 (“If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim.”), 7104(b) (“Except as provided in section 5108 of this title, when a claim is disallowed by the Board, the claim may not thereafter be reopened and allowed and a claim based upon the same factual basis may not be considered.”); 7105(c) (“If no notice of disagreement is filed in accordance with this chap *329 ter within the prescribed period, the action or determination shall become final and the claim will not thereafter be reopened or allowed, except as may otherwise be provided by regulations not inconsistent with this title.”)- As thoroughly discussed in the majority opinion, the Secretary has recognized this procedural framework by promulgating 38 C.F.R. §§ 3.104(a), 3.105, and 3.905(d) (1999), and the Court today finds that these provisions “constitute plausible and reasonable interpretations of the law.” Ante at 325.
Third, there is no statutory or regulatory authority for applying a preponderance standard to any determinations on matters subject to a decision by the Secretary. This standard finds no basis in title 38 but rather is a prior creation of the dissenting judges. See Laruan v. West, 11 Vet.App. 80 (1998) (en banc); Sarmiento v. Brown, 7 Vet.App. 80 (1994); Aguilar v. Derwinski, 2 Vet.App. 21 (1991); cf. Laruan, 11 Vet.App. at 86 (Kramer and Steinberg, JJ., concurring in part and dissenting in part); Sarmiento, 7 Vet.App. at 86 (Kramer, J., concurring); Rogers v. Derwinski, 2 Vet.App. 419, 422 (1992) (Steinberg, J., concurring); Aguilar, 2 Vet.App. at 23 (Kramer, J., concurring). By forcefully asserting that the preponderance standard is applicable in a forfeiture situation, the dissenters appear to recognize that the foundation upon which Laman rests is seriously undermined by the opinion issued here today. Indeed, they are correct; Laman cannot possibly remain viable in light of the instant opinion, because it would be inconceivable to apply a new and material evidence analysis when adjudicating claims to reopen forfeiture decisions, but to require a higher, preponderance burden for individuals who were simply unable (perhaps due to the loss of a DD Form 214) to provide the proper evidence of service at the time of the initial adjudication of their claims. For the reasons set forth in the joint dissent in Laruan, 11 Vet.App. at 86 (Kramer and Steinberg, JJ., concurring in part and dissenting in part), we await with anticipation the formal demise of La-man — when the Court acknowledges that status is merely one element of a claim, as the Federal Circuit has already prescribed (Maggitt v. West, 202 F.3d 1370, 1374-75 (Fed.Cir.2000); Collaro v. West, 136 F.3d 1304, 1308 (Fed.Cir.1998); Grantham v. Brown, 114 F.3d 1156, 1160 n. 1 (Fed.Cir.1997) (Archer, C.J., concurring)) and, indeed, as this Court has stated in Fenderson v. West, 12 Vet.App. 119, 125 (1999).
Fourth, our dissenting colleagues further confound their position by indicating that it is the liberal procedural rights of title 38, available, in their view, only to “veterans” and to those “untainted by fraud,” that are lost upon forfeiture. However, because status as a veteran is not necessarily lost by virtue of a section 6103(a) forfeiture decision (see, e.g., 38 U.S.C. § 6103(c) (“[fjorfeiture of benefits by a veteran shall not prohibit payment of[, inter alia,] the burial allowance ... in the event of the veteran’s death” (emphasis added))), a forfeitee also appears to continue to have status as a veteran for certain purposes. Furthermore, after September 1, 1959, the forfeiture provisions of section 6103(a) are not applicable to “any individual who was a resident of, or domiciled in, a State at the time the act or acts occurred on account of which benefits would, but for this subsection, be forfeited” (38 U.S.C. § 6103(d)(1)); and thus forfeiture under section 6103 generally would not be imposed on dishonest veterans living within the United States. Consequently, although the dissenters purport to create a system where the “indulgent” or “liberal” procedural rights of title 38 will be reserved for honest, deserving veterans, their construct apparently would prevent only certain dishonest claimants residing outside the United States from relying on such procedures and, even then, not for all purposes.
Fifth, although, as we indicated above, status as a veteran (or a surviving spouse) is not necessarily lost as the result of a *330 forfeiture decision under section 6103, we feel compelled to respond to the dissenters’ assertions that status determinations generally involve “a simple ministerial act,” such as a cursory scan of the claimant’s DD Form 214 or marriage certificate. Even though it is possible that status determinations, in certain instances, might be made by perusal of a single document, status may often involve complicated determinations regarding such matters as character of service, marital status, and dependent-child helplessness. For instance, a “veteran” is defined by statute as “a person who served in the active military, naval, or air service, and who was discharged or released therefrom under conditions other than dishonorable.” 38 U.S.C. § 101(2). Pursuant to 38 C.F.R. § 3.12(a) (1999), “[a] discharge under honorable conditions is binding on [VA] as to character of discharge.” However, in order for a recipient of any other type of discharge to be eligible for VA benefits, a determination must be made as to whether that discharge will be considered to have been issued “under conditions other than dishonorable” (38 U.S.C. § 101(2)) — a determination which must be made (in the absence of statutory guidance as to the conditions constituting an “other than dishonorable” discharge) under 38 C.F.R. § 3.12 (1999). See Camarena v. Brown, 6 Vet.App. 565, 567-68 (1994) (“Congress clearly intended that the phrase ‘conditions other than dishonorable’ was to include persons other than those receiving dishonorable discharges,” and the Secretary, in a valid exercise of discretion, defined in 38 C.F.R. § 3.12 discharges considered to be under dishonorable conditions).
Indicative of the morass into which one descends when attempting to apply this regulation is 38 C.F.R. § 3.12(d)(4), which provides, inter alia, that a discharge because of “willful and persistent misconduct” will be considered to have been issued under dishonorable conditions, unless the discharge was because of a “minor offense” and “service was otherwise honest, faithful[,] and meritorious.” In this regard, we note that the majority in La-man (which included the dissenters in the instant case) was unable to apply this provision properly. In that case, the majority erroneously concluded that the appellant had received a dishonorable discharge and that he thus did not have status as a veteran (see Laruan, 11 Vet.App. at 82), when, in fact, the appellant had been “discharged without honor” due to a period of absence without leave. See Laruan, 11 Vet.App. at 90 (Kramer and Steinberg, JJ., concurring in part and dissenting in part). The majority there failed to recognize that the type of discharge noted on the appellant’s DD Form 214 was not dispositive as to the character of his discharge for VA benefits purposes, and that a determination should have been made under 38 C.F.R. § 3.12(d)(4) as to whether his discharge was based on “willful and persistent misconduct” and would thus be considered to have been under dishonorable conditions. Id. This murky statutory and regulatory framework regarding status as a veteran is further complicated by provisions that create bars to benefits for individuals receiving discharges under certain specified circumstances but that do not address the resulting implications of the characterization of the discharge. See 38 U.S.C. § 5303(a), (b); 38 C.F.R. § 3.12(b), (c) (1999); see also Butler v. West, 12 Vet.App. 7, 8 (1998) (Kramer, J., concurring) (even though petitioner was barred under section 5303(a) from receipt of VA benefits, he had status as veteran because his discharge was under honorable conditions).
Furthermore, considering the complicated statutory and regulatory provisions regarding the definition of surviving spouse, it hardly seems accurate to characterize status determinations under those provisions as “a simple exercise.” See 38 U.S.C. § 101(3) (“ ‘surviving spouse’ means ... a person of the opposite sex who was the spouse of a veteran at the time of the veteran’s death, and who lived with the veteran continuously from the date of mar *331 riage to the date of the veteran’s death (except where there was a separation which was due to the misconduct of, or procured by, the veteran without the fault of the spouse) and who has not remarried or (in cases not involving remarriage) has not since the death of the veteran, and after September 19, 1962, lived with another person and held himself or herself out openly to the public to be the spouse of such other person”); 38 C.F.R. § 3.50 (1999); 38 C.F.R. § 3.53 (1999) (“statement of the surviving spouse as to the reason for the separation will be accepted in the absence of contradictory information”); see also Cacatian v. West, 12 Vet.App. 373, 375-77 (1999) (holding that a person who was the legal spouse of a veteran but was participating in a marital-type relationship with someone other than the veteran at the time of the veteran’s death was not eligible to claim surviving spouse status at the time of the veteran’s death and that, therefore, the statute providing restoration of prior surviving spouse eligibility was not applicable); Owings v. Brown, 8 Vet.App. 17, 19-20 (1995) (discussing modifications to statutes and regulations applicable to surviving spouse who remarries and later reapplies for dependency and indemnity compensation); Vecina v. Brown, 6 Vet.App. 519, 522 (1994) (discussing cohabitation requirement of section 101(3) and noting that whether illicit relationship by spouse defeats requirement of continuous cohabitation depends on duration, frequency, and conditions of such relationship); Gregory v. Brown, 5 Vet.App. 108, 112 (1993) (discussing “without the fault of’ requirement of section 101(3) and finding that fault or absence of fault is to be determined based on analysis of conduct at time of separation); see also 38 C.F.R. § 3.1© (1999) (“Marriage means a marriage valid under the law of the place where the parties resided at the time of marriage, or the law of the place where the parties resided when the right to benefits accrued.”); 38 C.F.R. § 3.205(a)(6) (1999) (“In jurisdictions where marriages other than by ceremony are recognized,” proof of marriage is established by “the affidavits ... of one or both of the parties to the marriage ... setting forth all of the facts and circumstances concerning the alleged marriage, such as the agreement between the parties at the beginning of their cohabitation, the period of cohabitation, places and dates of residence, and whether children were born as the result of the relationship. This evidence should be supplemented by affidavits ... from two or more persons who know as the result of personal observation the reputed relationship which existed between the parties to the alleged marriage including the periods of cohabitation, places of residences, whether the parties held themselves out as married, and whether they were generally accepted as such in the communities in which they lived.”).
Does all of this sound like “a simple ministerial act”?
Finally, we note, in response to a statement by one of the dissenters (“In fairness to the many who have served and qualify for title 38 benefits, those who have cheated that system should remain outcasts until, and if, they show [sic] their forfeiture was [sic] in error through the usual adversarial process and not the indulgent VA process reserved for claimants untainted by fraud.”), that a new and material evidence standard is not necessarily a light burden to meet; indeed, it is difficult to perceive of any evidence that would “bear[ ] directly and substantially upon the specific matter” (38 C.F.R. § 3.156(a) (1999)) other than evidence exculpatory of the claimant’s misdeeds or evidence showing VA fraud in the original decision.
As we stated above, we recognize the superficial allure, in an ideal world, of a bifurcated system based on deserving and undeserving individuals such as the system that our dissenting colleagues have sought to fabricate. However, there are compelling reasons counseling against such a system. In the real world, with diverse factu *332 al situations and complicated statutory and regulatory provisions, the construct conjured by the dissenters would create an unnecessary and legally unfounded further complication, one that in all likelihood would make not one iota of difference in any outcome.